**In re ATLANTIC FINANCIAL MANAGEMENT, INC.**
**Securities Litigation, Petitioners.**

**No. 85–1454.**

United States Court of Appeals,
First Circuit.

Argued Nov. 14, 1985.
Decided Feb. 19, 1986.

**30**

Jerome Gotkin, with whom Gordon P. Katz, Steven M. Sayers, Widett, Slater & Goldman, P.C., Alvin K. Hellerstein, and Stroock & Stroock & Lavan, were on brief, for appellant AZL Resources, Inc.

Peter J. Schneider with whom Lawrence G. Cetrulo, Burns & Levinson, Samuel Adams and Warner & Stackpole, were on brief, for appellees.

Before COFFIN and BREYER, Circuit Judges, and WYZANSKI,* Senior District Judge.

BREYER, Circuit Judge.

This appeal presents a certified question, 28 U.S.C. § 1292(b), arising in a Securities Act misrepresentation case. Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b); Rule 10b–5, 17 C.F.R. § 240.10b–5. The plaintiffs in the case claim that Maurice Strong, the chairman of AZL Resources, Inc., misrepresented certain facts as a result of which they bought AZL stock and later (when the stock's price declined) lost money. The plaintiffs want to recover damages for the misrepresentation, not only from Strong, but also from AZL, Strong's corporate employer. They assert a common law theory of agency—based on "apparent authority"—as a ground for holding the corporation 'vicariously' liable for Strong's misdeeds.

The certified question concerns the relationship between a special section of the Securities Act of 1934, section 20(a), 15 U.S.C. § 78t(a), and various common law theories of vicarious liability (of which "apparent authority" is one). That section reads as follows:

*Every person who, directly or indirectly, controls any person liable* under any provision of this chapter or of any rule or regulation thereunder *shall also be liable* jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, *unless the controlling person acted in good faith and did not directly or indirectly induce the* act or acts constituting the *violation* or cause of action.

(Emphasis added.)

The significance of this section here lies in the contrast between its proviso and the common law. The proviso requires a finding of liability unless the controlling person 1) "acted in good faith" and 2) did not "induce" the violation. By way of contrast, common law agency theories may impose liability upon a principal or an employer without these two preconditions. The case before us asks whether the Securities Act means that section 20(a) is an *exclusive* remedy. That is to say, does the existence of this section foreclose holding a principal (say, a corporation) or an employer (who 'controls' an agent or employee) 'vicariously' liable when the proviso's two conditions are not met?

The circuits seem to be split about the proper answer to this question. The Second, Fourth, Fifth, Sixth, Seventh and Tenth Circuits have held that section 20(a) does not constitute an exclusive substitute for vicarious liability that might otherwise exist. *E.g., Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 712–16 (2d Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980); *John Hopkins University v. Hutton,* 422 F.2d 1124, 1130 (4th Cir.1970), *cert. denied after later appeal,* 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974); *Paul F. Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111, 1118–19 (5th Cir.1980); *Holloway v. Howerdd,* 536 F.2d 690, 694–95 (6th Cir.1976); *Fey v. Walston & Co., Inc.,* 493 F.2d 1036, 1051–52 (7th Cir.1974); *Kerbs v. Fall River Industries, Inc.,* 502 F.2d 731, 740–41 (10th

* Of the District of Massachusetts, sitting by designation.

Cir.1974). The Ninth, and (with exceptions) the Third Circuits, have held the contrary. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1132–33 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975); *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 180–84 (3d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982); *Rochez Brothers, Inc. v. Rhoades*, 527 F.2d 880, 884–86 (3d Cir.1975). We have not previously considered whether, despite section 20(a), principals may be held 'vicariously' liable for the 'securities related' misrepresentations of their agents. *But cf. Holmes v. Bateson*, 583 F.2d 542, 560 (1st Cir.1978) (discussing related questions). We now consider this question; and we join the majority expressly—at least in respect to the common law "apparent authority" theory here at issue.

Because there are several different common law agency theories that may lead to 'vicarious liability' and because not all courts use the same terminology in respect to each, it may help to clarify the exposition of our reasons if we divide this opinion into two parts. First, we shall explain the basis for liability that would exist in this, and similar cases, in the absence of section 20(a). Second, we shall ask whether, or when, the existence of section 20(a) might make a difference.

### I

In the absence of section 20(a) a corporate principal's (or employer's) 'vicarious' liability for the misrepresentations of an agent (typically an employee) must find its source in Securities Act § 10(b)—the statutory provision that makes it "unlawful for any person, directly or indirectly ... to use ... any manipulative or deceptive device" in connection with the purchase or sale of securities. The "majority rule" circuits have at least implicitly read these words as encompassing some kinds of vicarious liability. (See cases cited at pp. 30–31, *supra*.) And, the Supreme Court, while restricting the liability of *primary* actors to persons who act with *"scienter," Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96

S.Ct. 1375, 47 L.Ed.2d 668 (1976), has nonetheless cited with approval cases imposing 'vicarious' liability upon corporations who employ those who knowingly or recklessly make misrepresentations. *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 568, 102 S.Ct. 1935, 1943, 72 L.Ed.2d 330 (1982) (hereinafter *ASME*), citing with approval *Holloway, supra; Kerbs, supra.*

These legal facts are not surprising. The common law has long imposed vicarious liability upon principals arising from torts committed by their agents. Whether broad language, such as that found in the Securities Act, embraces such principles is a matter of statutory interpretation based upon congressional intent. *ASME*, 456 U.S. at 569–70, 102 S.Ct. at 1944–45. And, the courts have tended to read congressional statutes that impose tort-like liability to embrace at least some of these well established common law agency principles, where language permits and doing so furthers basic statutory purposes. *Id.* at 568, 102 S.Ct. at 1943 (liability imposed upon principals for antitrust violations committed by agents). The courts must also decide *which* common law rules apply under the statutory scheme. And, it will help our exposition if, for this purpose, we divide relevant agency liability rules into three different kinds.

■ First, the common law typically holds principals liable when an agent's tortious representation is *actually authorized*, whether the agent's authority be express or implied. *Restatement (Second) of Agency* §§ 7, 257 (1958); W. Seavey, *Handbook of the Law of Agency* § 91 (1964). Such liability is not of great practical importance when the principal is a corporation, however, for a corporation (its charter, bylaws, directors' actions, etc.) rarely, if ever, *actually* authorizes torts. (Indeed, were it to do so, the corporation might be 'directly' rather than 'vicariously' liable.)

■ Second, a corporation's liability for an agent's misrepresentations may rest upon a theory of *"apparent authority."*

*Restatement (Second) of Agency* § 8; *cf. id.* at § 8B (a related, but distinguishable theory of 'estoppel'). The agent's tortious action, while not actually authorized by the corporation, appears so to those adversely affected. Vicarious "[l]iability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business provided to him." *ASME,* 456 U.S. at 566, 102 S.Ct. at 1942, quoting with approval from *Restatement (Second) of Agency* § 261, comment a, p. 571. Courts have commonly imposed liability based on "apparent authority" upon a corporation in both state and federal "misrepresentation" cases—particularly when the person making the misrepresentation is an important corporate official. *See* 10 R. Eickhoff, *Fletcher on Corporations* § 4886 (1978 & Supp. 1985).

A third basis for imposing vicarious liability consists of what commentators have called *"inherent agency powers"* or (in the master/servant context) "respondeat superior" or sometimes simply "the agent's position." *Restatement (Second) of Agency* § 8A; W. Seavey, *supra,* at § 8F and § 58. We shall for convenience refer to this basis of liability as "status based" (in contrast with "authority based") liability. This non-authority based vicarious liability rests upon certain important social and commercial policies. *See, e.g.,* W. Seavey, *supra,* at § 58 ("[T]he business enterprise should bear the burden of the losses created by the mistakes or overzealousness of its agents [because such liability] stimulates the watchfulness of the employer in selecting and supervising the agents."); and at § 61 ("[T]he principal, [having] ... the opportunity of investigating the agent ... should guarantee the [agent's] honesty"). The precise scope of "status based" liability is unclear, with liability often depending upon the relationship of the social policy to the type of "principal/agent" circumstance at hand. *Id.* at § 8F. A "master," for example, is not held vicariously liable (on these grounds) for the torts of a "servant" where the servant does not act for the purpose of serving his master but is on a 'frolic of his own.' *Restatement (Second) of Agency* § 235 (no liability when the servant acts "with no intention to perform it as a part or incident to a service on account of which he is employed"). Yet, a principal (even though not a 'master') *is* liable for tortious misrepresentations of an agent (even though not a 'servant') even if the agent "acts entirely for his own purposes, unless the [injured person] ... has notice of this." *Id.* at § 262.

The case before us is of the *second* kind; the *"apparent authority"* of a high corporate officer. There are strong reasons for believing that the 'direct or indirect' language of the Securities Act encompasses this kind of common law agency liability. For one thing, as between the corporation that has placed the official in a position to invoke its authority (though improperly) and a victim, it seems fairer that the former bear the burden of an uncompensated loss. Further, imposing such liability will encourage corporate officials to prevent unauthorized (but 'apparently authorized') misrepresentations, thereby helping to achieve an important Securities Act purpose. Moreover, both related state "misrepresentation" law (which the federal act leaves untouched, 15 U.S.C. § 78bb(a)), and federal cases (quoted by the Supreme Court with approval) apply "apparent authority" liability principles. *ASME,* 456 U.S. at 568, 102 S.Ct. at 1943, citing with approval *Holloway, supra; Kerbs, supra.* Thus, we have little doubt that, in the absence of section 20(a) we should read the Securities Act of 1934 as imposing vicarious liability upon a corporation for the "apparently authorized" misrepresentations of a high official.

## II

We turn now to the question directly before us—whether section 20(a) precludes the imposition of this kind of vicarious liability that would otherwise exist. We think not for several reasons. First,

the legislative history of section 20(a) reveals no such intent. Though the relevant written history is sparse, it is significant, for it makes clear that the section was aimed at expanding liability, rather than contracting it. Section 20(a) was modeled on section 15 of the 1933 Securities Act, 15 U.S.C. § 77*o*, and it has an identical purpose. That purpose, as expressed by one of its authors, Thomas G. Corcoran, is "to prevent evasion of the [Act] ... by organizing dummies who will undertake the actual things forbidden by the [Act]." Hearings before the Senate Comm. on Banking and Currency on S.Res. 84 (72d Cong.) and S.Res. 56 and 97 (73d Cong.), 73 Cong., 1st Sess., pt. 15, at 6571 (1934). Congress thus saw this section as *imposing* liability upon, say, a shareholder or a director who controlled a corporation engaged in misrepresentation, presumably including persons beyond the reach of ordinary common law agency liability. *See id.* at 6639; 2 Federal Securities Code § 793 & comment (3)(b). There is no statement of purpose suggesting that Congress saw this section as *removing* liability that the Act would otherwise impose upon a corporation that 'controlled' an officer or director. Other circuits have analyzed the statute's history in some detail; and, without simply repeating their analysis of the history, we adopt their conclusions. *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 812 (2d Cir. 1975); *Paul F. Newton & Co.*, 630 F.2d at 1115–16.

Second, the reasons, drawn from the legislative history, offered by those circuits with a different view and by appellants, do not convince us. The appellants refer to the language of the statute, noting that section 20(a) in essence says, "Every person who ... controls any person liable ... shall also be liable ... unless the controlling person acted in good faith and did not directly or indirectly induce the act...." Even assuming, as we do, that the word "control" includes the agency relation (*see* 15 U.S.C. § 77*o*; H.R.Rep. No. 1383, 73d Cong., 2d Sess. 26 (1934)), this language need not be read as providing an *exclusive* route for imposing liability. Section 20(a)

does not *say* that it is exclusive; and its proviso ("unless ...") is naturally read as referring to the (potentially *non*exclusive) liability which section 20(a) *itself* provides.

Appellants refer to the fact that the House and Senate differed in the versions of section 20(a) that they initially presented. The Senate wanted to impose an "insurer's liability" on controlling persons; while the House chose a "fiduciary standard" which eventually became the law. *See* S.Rep. No. 47, 73d Cong., 1st Sess. 5 (1933) (The Fletcher Report); H.R.Rep. No. 85, 73d Cong., 1st Sess. 5 (1933); H.R.Conf. Rep. No. 152, 73d Cong., 1st Sess. 27 (1933). Yet, this fact is not determinative once section 20(a) is seen as nonexclusive, for, in that event, the different versions refer to *liability under the section,* not to *all* liability that the statute may impose upon one who meets the definition of 'controlling person.' Appellants also point to statements that legislators made in 1934 when they added a proviso to section 15 of the 1933 Act, to the effect that the "mere existence of control is not made a basis for liability." H.R.Conf.Rep. No. 1838, 73d Cong., 2d Sess. 42 (1934). Yet, again, this statement in context refers to the liability *created* by section 15, not to liability that would exist anyway in its absence. To read it otherwise is to ignore the main thrust of sections 15 and 20(a).

Third, to read section 20(a) as providing the *exclusive* basis for imposing liability on one "who, directly or indirectly, controls any person liable" is to read it as having worked considerable change in existing liability assumptions. On this reading, most corporations, typically liable vicariously under state misrepresentation law for their officers' acts, would often escape liability under federal law. *See* 10 *Fletcher on Corporations* § 4886. Yet, the legislative history nowhere refers to any such important difference between state and federal law. In fact, by explicitly including corporations in its definition of "person," 15 U.S.C. § 77b(2), the statute seems to foresee that corporations will be held liable. *See Management Dynamics, Inc.*, 515 F.2d

at 812. Yet, since corporations can act only through agents, how, without principles of vicarious liability, (or twisting the meaning of "good faith") could this ordinarily be done?

Fourth, as we have previously noted, the vast majority of circuits have concluded that the "controlling person" provision of section 20(a) is not an exclusive basis for imposing secondary liability under the Securities Act and thus that common law principles of vicarious liability are applicable to section 10(b) and Rule 10b–5 violations. *See* L. Loss, *Fundamentals of Securities Regulations* 1181 (1983) ("The Code follows the majority view, which recognizes common law liability [of a principal for the acts of its agents], so that the [section 20(a)] defenses are available only when the defendant controls as a holding company or in some other nonagency way.") We disagree with appellants' argument that the Fourth and Eighth Circuits favor their views, as we find recent cases in those circuits that ally them with the majority. *Metge v. Baehler*, 762 F.2d 621, 630–31 (8th Cir.1985), *aff'g* 577 F.Supp. 810 (S.D.Iowa 1984), *cert. denied*, — U.S. —, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986); *Carras v. Burns*, 516 F.2d 251, 259 (4th Cir.1975); *Johns Hopkins University*, 422 F.2d at 1130; *Frankel v. Wyllie & Thornhill, Inc.*, 537 F.Supp. 730, 740–42 (W.D.Va. 1982).

Moreover, we believe the persuasive force of the opinions of the Ninth and Third Circuits, in respect to the "exclusive" nature of section 20(a), is limited by the fact that the cases there in issue involved circumstances where traditional agency principles *themselves* seemed to prohibit, or caution against, liability. The leading Ninth Circuit case of *Zweig v. Hearst Corp.*, *supra*, involved a newspaper's financial columnist who published a false statement about a company in whose stock he had invested. The court did not see the case as dealing with "apparent authority." (Whether the columnist was "apparently authorized" to make his statements on behalf of the newspaper is doubtful.) *See* W. Seavey, *supra*, at § 8D. And, the very

question that seemed to disturb the court—the practicality of strict supervision—seems relevant to the scope of "status based" liability under common law. *See* Seavey, *supra*, at § 92E. *See also Christoffel v. E.F. Hutton & Co., Inc.*, 588 F.2d 665 (9th Cir.1978). In the earlier case of *Kamen & Co. v. Paul H. Aschkar & Co.*, 382 F.2d 689 (9th Cir.), *cert. granted*, 390 U.S. 942, 88 S.Ct. 1021, 19 L.Ed.2d 1129, *cert. dismissed*, 393 U.S. 801, 89 S.Ct. 40, 21 L.Ed.2d 85 (1968), on which *Zweig* based its conclusion regarding the "exclusivity" of section 20(a), the court specifically held that the principal was *not* liable under traditional agency principles; and it held that section 20(a) negated certain of the appellants' *additional* theories of liability. *Id.*

The Third Circuit began its leading "minority view" case, *Rochez Brothers, Inc. v. Rhoades*, 527 F.2d at 884, by noting that the corporate agent had "acted as an individual for his own account and the defrauded party knew that the officer was not acting for the corporation." Thus, *Rochez* was in fact a case without any basis for liability under traditional common law agency principles. Nothing in the case suggests the presence of "actual authority"; while the victim's *knowledge* precludes both "apparent authority" and "status based" liability. *Restatement (Second) of Agency* § 262. Appellants read *Rochez* as expressing the fear that broad 'agency based' liability "would ... impose a duty on a corporation to supervise and oversee the activities of its directors and employees when they are dealing with their own corporate stock as individuals, and not for the corporation or for the benefit of the corporation." *Rochez*, 527 F.2d at 885. In that circuit's view, such liability "would violate the legislative purpose and effectively nullify the 'controlling person' provision of the Act." *Id.* at 885–86. But, the extent to which the premise of this argument is valid depends upon *which* agency principles courts read into the Act, and where and how they apply them. As we have previously pointed out, courts have applied vicarious liability principles flexibly in accord-

ance with their underlying policy purposes and the purposes of the statute into which the courts have read them. *See SEC v. Geon Industries, Inc.*, 531 F.2d 39 (2d Cir. 1976); *Management Dynamics, Inc., supra*. Indeed, even the Third Circuit has denied the exclusivity of section 20(a) by accepting the imposition of vicarious liability in situations where the employer has "a duty to exercise a high standard of supervision" or where "the employee was a high level officer or director of the employer, the employer was a brokerage firm, or both." *Sharp*, 649 F.2d at 182. A flexible application of vicarious liability principles should adequately protect section 20(a)'s objectives from erosion. We do not see why reading section 20(a) as *exclusive* of all agency based liability is necessary to do so.

### III

In sum, we conclude that section 20(a) does not preclude the assertion of liability—based on common law notions of "apparent authority"—against a corporation for the misrepresentations of an important corporate officer. We state this conclusion narrowly, however, for reasons that, by now, should be apparent. First, the *extent* to which a federal statute, such as the Securities Act, embraces common law agency principles, depends (as the Supreme Court stressed in the antitrust context) upon the extent to which their adoption is consistent with the statute's language and furthers its purposes. *ASME*, 456 U.S. at 569–70, 102 S.Ct. at 1944–45. As the Second Circuit has stated, the fact that use of common law agency concepts may be appropriate in some circumstances does not mean that we should import them where this will not further the policies of the Securities Act. *Geon Industries*, 531 F.2d at 54; *Management Dynamics*, 515 F.2d at 813. Second, the scope of the common law concepts themselves, at least at their outer perimeters, is sensitive to the basic legal policies relevant to the particular legal context. Of course, section 20(a) reflects *one* set of purposes underlying the Securities Act; and in an appropriate con-

text (perhaps involving the use of 'dummies') it could become relevant to a definition of common law vicarious liablity. Yet, none of this is here at issue. The facts and theories of this case place it in the heartland of traditional agency law; and we find in section 20(a) no basis for exemption.

For these reasons, the determination of the district court is

*Affirmed.*