**Waldron Keith SEOLAS, Individually and Derivatively on behalf of Cimetrix, Inc., Plaintiff,**

v.

**Paul A. BILZERIAN, et al., Defendants,**

**and**

**Cimetrix Inc., Nominal Defendant.**

Civil No. 2:96–CV–372W.

United States District Court,
D. Utah,
Central Division.

Jan. 28, 1997.

Richard R. Mainland, John A. O'Malley, Judith A. Holiber, Fulbright & Jaworski, L.L.P., Los Angeles, CA.

David B. Watkiss, Watkiss, Dunning & Watkiss, Salt Lake City, UT, for Waldron Keith Seolas.

Max D. Wheeler, Kory D. Rasmussen, Snow, Christensen & Martineau, Salt Lake City, UT, for Cimetrix, Inc.

Paul A. Bilzerian, Tampa, FL.

## MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR ALTERNATIVELY FOR SUMMARY JUDGMENT, ON PLAINTIFF'S THIRD AND EIGHTH CLAIMS FOR RELIEF

WINDER, Chief Judge.

This matter is before the court on Defendant Cimetrix's motion for judgment on the pleadings, or alternatively for summary judgment, on Plaintiff Dr. Waldron K. Seolas' third and eighth claims for relief.[1] The court heard counsels' argument on January 3, 1996. At the hearing, David B. Watkiss represented Plaintiff and Max D. Wheeler and Korey D. Rasmussen represented Cimetrix. Before the hearing, the court had carefully considered all pleadings, memoranda, and other materials submitted by the parties. Following the hearing, the court has further considered the parties' materials, the argument of counsel, and the law and facts relevant to Cimetrix's Motion. Now, being fully advised and good cause appearing, the court enters the following memorandum decision and order.

### I. BACKGROUND

Plaintiff has charged Cimetrix with violating § 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j, and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1993), and with common-law fraud. The facts of this case are fully laid out in the court's orders of August 20, 1996, and October 9, 1996. Those facts are incorporated into this order and, unless necessary, will not be repeated herein.

Plaintiff claims that in November or December 1994, Paul A. Bilzerian, acting as an agent for Cimetrix, wrongfully induced Plaintiff and his family to return approximately 215,000 shares of Cimetrix stock back to Cimetrix without monetary consideration. Plaintiff alleges that Bilzerian represented to Plaintiff that he had discovered a discrepancy between Cimetrix shareholder records regarding Plaintiff's holdings and what had been reported in prior filings with the Securities Exchange Commission. Bilzerian allegedly told Plaintiff that filing corrected SEC reports would not solve the problem. Instead, Plaintiff contends that Bilzerian represented to him that, to protect Cimetrix from an SEC investigation and a decline in the value of Cimetrix stock, Plaintiff and his family would have to return approximately 215,000 shares back to Cimetrix.

Plaintiff now claims that Bilzerian's statements were fraudulent and that he wrongfully induced the transfer of those shares. According to Plaintiff, Bilzerian overstated any possible discrepancy between the shareholder records and the SEC filings, and that if a discrepancy existed, it could have easily been corrected by an amended SEC filing. Plaintiff also contends that there was no danger to Cimetrix whatsoever as a result of such discrepancies. Plaintiff argues that Bilzerian made all of the representations knowing that they were false and for the purpose of pressuring Plaintiff and his family into returning the 215,000 shares to Cimetrix to inflate the value of Bilzerian's own stock options in the company and to use those shares in funding an employee stock option plan without diluting his own interest in Cimetrix.

### II. LEGAL STANDARD UNDER RULE 12(c)

The court will treat Cimetrix's motion under Federal Rule of Civil Procedure 12(c). A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss. *McHenry v. Utah Valley Hosp.*, 927 F.2d 1125, 1126 (10th Cir.1991). The court will dismiss a cause of action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted " 'only when it appears that the plaintiff can

---

**1.** The court originally had three additional motions before it: (1) Cimetrix's motion to dismiss, or alternatively for summary judgment on, Plaintiff's sixth claim for relief; (2) Defendant Paul A. Bilzerian's motion to dismiss counts 1, 2, 4, 5, 7, and 9; and (3) Cimetrix's motion to dismiss all derivative claims. The parties have resolved these three motions. The only counts still in dispute are claims three and eight.

prove no set of facts in support of the claim that would entitle the plaintiff to relief. In making this determination, [the court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.'" *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543 (10th Cir.1995) (quoting *Sharp v. United Airlines*, 967 F.2d 404, 406 (10th Cir.1992)). "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailable one." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (citation omitted) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

### III. *DISCUSSION*

#### A. *Section 10(b) and Rule 10b–5*

Plaintiff's third cause of action alleges that Bilzerian, acting as an agent of Cimetrix, violated § 10(b) of the 1934 Act and Rule 10b–5, and that Cimetrix is liable for Bilzerian's alleged violation under a theory of respondeat superior. Section 10(b) states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe.

15 U.S.C. § 78j.

Rule 10b–5, the parallel regulation to § 10(b), frames the prohibited conduct in similar terms:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1993).

Cimetrix advances three arguments in favor of dismissing this claim.[2] First, Cimetrix argues that the Supreme Court's decision in *Central Bank v. First Interstate Bank*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), extinguishes all forms of secondary or vicarious liability under § 10(b), including liability based on respondeat superior. Second, Cimetrix asserts that even if Plaintiff's theory of respondeat superior survives the *Central Bank* decision the claim fails because Bilzerian's alleged misstatements were not in connection with a "purchase or sale" of securities as required by § 10(b). Third, Cimetrix challenges the sufficiency of Plaintiff's allegations.

#### 1. *Central Bank's Effect on Respondeat Superior*

It is well established that § 10(b) implicitly creates a private cause of action against parties who commit a manipulative or deceptive act in connection with the purchase or sale of securities. *Central Bank*, 511 U.S. at 166, 114 S.Ct. at 1443; *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169 n. 9, 30 L.Ed.2d 128 (1971).

---

2. Cimetrix originally advanced a fourth argument in support in its motion. Cimetrix argued that summary judgment must be granted dismissing Plaintiff's third claim on the grounds that Bilzerian was not an agent of Cimetrix at the time of his alleged misstatements, and therefore the statements could not be imputed to Cimetrix. Cimetrix has since retreated from this position and now concedes, for purposes of this motion only, that the question of Bilzerian's agency relationship with Cimetrix is a disputed material fact and summary judgment cannot be granted.

Before *Central Bank*, it was also well settled that aiding and abetting a § 10(b) violation itself gave rise to a private cause of action under § 10(b). *See Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir.1992). In *Central Bank*, however, the Supreme Court eliminated aiding and abetting liability under § 10(b), holding that § 10(b) "prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act." 511 U.S. at 177, 114 S.Ct. at 1448. Section 10(b) liability does not extend "to those who do not engage in the manipulative or deceptive practice, but who aid and abet the violation." *Id.* at 166–67, 177, 114 S.Ct. at 1443, 1448.

The Supreme Court's primary reasoning in the *Central Bank* decision was that the text of § 10(b) did not provide for aiding and abetting liability. *Id.* at 177, 114 S.Ct. at 1448. In determining the scope of conduct prohibited by § 10(b) and Rule 10b–5, the text of the statute controls. *Id.* at 173, 114 S.Ct. at 1446.[3] Thus, because the text of § 10(b) only proscribes "manipulative or deceptive" acts, and "does not in terms mention aiding and abetting," the Court refused to extend § 10(b) liability to a party who did not itself commit a manipulative or deceptive act regardless of whether that party assisted another to commit such an act. *Id.* at 175, 114 S.Ct. at 1447. This is consistent with the Court's prior rulings concerning attempts by plaintiffs and the SEC to broaden the statute's reach to include conduct not prohibited by § 10(b)'s text. *See, e.g., Chiarella v. United States*, 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980) (trading securities without disclosing inside information does not violate § 10(b) unless the trader has an independent duty to disclose); *Santa Fe Indus. v. Green*, 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977) (section 10(b) does not prohibit "a breach of

fiduciary duty by majority stockholders, without any deception, misrepresentation, or nondisclosure" because such an act is not manipulative or deceptive conduct); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201, 96 S.Ct. 1375, 1384–85, 47 L.Ed.2d 668 (1976) (recognizing that "manipulative or deceptive" language in § 10(b) refers to "knowing or intentional" misconduct and refusing to expand scope of liability under § 10(b) to include negligent misconduct).

Besides aiding and abetting liability, a majority of pre-*Central Bank* courts had established that respondeat superior was a viable theory of liability in § 10(b) cases. *See, e.g., Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1576 n. 27 (9th Cir.1990); *Castleglen, Inc. v. Commonwealth Sav. Ass'n*, 689 F.Supp. 1069, 1072 (D.Utah 1988); *accord Kerbs v. Fall River Indus.*, 502 F.2d 731, 740–41 (10th Cir.1974). These courts held that § 20(a) of the 1934 Act, which provides for "controlling person" liability under § 10(b), did not supplant common-law agency principles and was therefore not the exclusive source of secondary liability for § 10(b) violations.[4] Under this view, respondeat superior and other agency theories were valid bases of liability under § 10(b) independent from § 20(a).[5] *See Hollinger*, 914 F.2d at 1576; *Castleglen*, 689 F.Supp. at 1072.

Cimetrix now asks this court to extend *Central Bank*'s holding to preclude private § 10(b) actions based on respondeat superior. Cimetrix advances the dissent's contention that § 10(b) actions "based on respondeat superior and other common-law agency principles" appear "unlikely to survive." *Id.* at 200 n. 12, 114 S.Ct. at 1460 n. 12 (Stevens, J., dissenting). Essentially, Cimetrix argues that a corporation can only be held liable for a § 10(b) violation under the "controlling person" provision in § 20(a).

---

**3.** To the extent Rule 10b–5 could be read more broadly than § 10(b), the text of the statute controls. *See Central Bank*, 511 U.S. at 173, 114 S.Ct. at 1446.

**4.** Section 20(a) states:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such

controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. 15 U.S.C. § 78t(a).

**5.** The court's holding today reaffirms this position. In jurisdictions recognizing the exclusivity of § 20(a) in imposing secondary liability in § 10(b) cases, the issue the court confronts today is moot.

■ The court holds, however, that the *Central Bank* decision does not abolish respondeat superior as a theory of liability under § 10(b). *See AT & T v. Winback & Conserve Program*, 42 F.3d 1421, 1429–32 (3d Cir.1994); *Pollack v. Laidlaw Holdings, Inc.*, No. 90–Civ–5788, 1995 WL 261518, at *16–17 (S.D.N.Y. May 3, 1995).[6] The court rejects Cimetrix's position that, because the text of § 10(b) does not specifically mention agency or respondeat superior, the reasoning of *Central Bank* makes these theories of liability unavailable.[7] Unlike the issues in *Central Bank* and the other above-cited Supreme Court cases, the issue in this case—whether respondeat superior is a legitimate basis of liability under § 10(b)—is not a question of defining the scope of affirmative conduct proscribed by the statute. Instead, the issue is "deciding on whose shoulders to place responsibility for conduct indisputably proscribed" by the statute. *AT & T*, 42 F.3d at 1430–31. "The principal is held liable not because it committed some wrongdoing outside the purview of the statute which assisted the wrongdoing prohibited by the statute, but because its status merits responsibility for the tortious actions of its agent." *Id.* at 1431.

The Supreme Court's approach in *American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982), provides the proper framework to determine whether courts should recognize respondeat superior as a valid basis of liability in § 10(b) cases. In *Hydrolevel*, the Supreme Court confronted a similar issue to the one at hand: whether a principal could be held liable for an agent's violations of the Sherman Act under a theory of apparent authority. As with § 10(b), the text of the Sherman Act does not specifically mention agency as a basis of liability. The Court, however, did not look solely to the text of the Sherman Act in its analysis. Instead, after recognizing that "[t]he apparent authority theory has long been the settled rule in the federal system," *id.* at 567, 102 S.Ct. at 1943, the Court inquired whether an agency theory of liability in the context of antitrust statutes was "consistent with the intent behind the antitrust laws," *id.* at 570, 102 S.Ct. at 1944.. Finding that it was, the Court held that a principal may be held liable for the antitrust violations of its agent. *Id.* at 570–74, 102 S.Ct. at 1944–47; *accord In re Atlantic Fin. Management*, 784 F.2d 29, 35 (1st Cir.1986) ("The extent to which a federal statute, such as the Securities Act, embraces common law agency principles, depends ... upon the extent to which their adoption is consistent with the statute's language and furthers its purpose."). Following this approach, the court will recognize § 10(b) liability based on respondeat superior if such a theory is consistent with the language of and the intent behind the securities laws.

■ The court finds that the respondeat superior theory of liability is consistent with the language of § 10(b) and the intent of the securities laws to promote full disclosure and discourage fraud in the securities markets. The legislative history supports this finding. *See generally In re Atlantic Fin. Management*, 784 F.2d at 32–33; *Paul F. Newton & Co. v. Texas Commerce Bank*, 630 F.2d 1111, 1115–16 (5th Cir.1980); *Castleglen*, 689 F.Supp. at 1072. So does the conclusion

**6.** At least three courts have concluded differently, but two of these courts provided little reasoning, *see In re Prudential Ins. Co.*, No. 1061–Civ–A. 95–4704, 1996 WL 392145, at *26 (D.N.J. May 10, 1996); *ESI Montgomery County v. Montenay Int'l Corp.*, No. 94–Civ–0119, 1996 WL 22979, at *3, 8 n. 9 (S.D.N.Y. Jan. 23, 1996), and one suggested such an outcome in dicta only, *see Pitten v. Jacobs*, 903 F.Supp. 937, 950 (D.S.C. 1995).

**7.** There remains the issue of whether the "directly or indirectly" language in § 10(b) provides textual authority for imposing liability based on agency principles. The *Central Bank* Court rejected this argument as it applied to aiding and abetting liability. The Court opined that "aiding

and .abetting liability extends beyond persons who engage, even indirectly, in a proscribed activity; aiding and abetting liability reaches persons who do not engage in the proscribed activities at all." 511 U.S. at 176, 114 S.Ct. at 1447. It is unclear, however, whether the same is true in the context of respondeat superior. In fact, at least one court has read that language as embodying agency principles. *See In re Atlantic Fin. Management*, 784 F.2d 29, 32 (1st Cir.1986) ("There are strong reasons for believing that the 'direct or indirect' language of the Securities Act encompasses ... common law agency liability."). Nevertheless, because the parties in this case neither briefed nor orally argued whether the "directly or indirectly" text in the statute speaks to agency theories of liability, the court offers no opinion on this issue.

that, by explicitly including corporations in its definition of "person," 15 U.S.C. § 77b(a)(2), Congress foresaw that corporations would be held liable under agency principles. As the Third Circuit explained, "in some instances, liability cannot be imposed without reference to agency principles—a corporation can only act through its agents, and therefore only can be bound through application of agency principles." *AT & T,* 42 F.3d at 1431. Indeed, even the Supreme Court, by acknowledging that entities may be primary violators of § 10(b), recognizes the need to apply agency principles to effectuate the purposes of the securities law. The Court stated in *Central Bank:*

> The absence of § 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the securities Acts. Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b–5, assuming *all* of the requirements for primary liability under Rule 10b–5 are met.

511 U.S. at 191, 114 S.Ct. at 1455. If, as the Supreme Court envisions, entities may be held liable under § 10(b) as primary violators, then courts must recognize agency principles as a source of primary liability, as stated above, corporations and other entities can act only through their agents.[8]

■ In sum, *"Central Bank*'s discussion of aiding and abetting should not be transplanted into the more settled realm of agency law." *AT & T,* 42 F.3d at 1432. Following the Supreme Court's guidance in *Hydrolevel,* the court concludes that the respondeat superior theory of liability in § 10(b) cases is consistent with, and furthers the intent of, the securities laws. Accordingly, Cimetrix's motion for judgment on this issue is denied.[9]

### 2. Purchase or Sale

■ Section 10(b) and Rule 10b–5 apply to fraud and material misstatements or omissions in connection with the "purchase or sale" of any security.[10] *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. Plaintiff asserts that his transfer of 215,000 shares of Cimetrix stock back to Cimetrix, which was allegedly induced by Bilzerian's misrepresentations that such a transfer was necessary, constitutes a purchase or sale of securities.

■ Cimetrix contends that this transaction does not constitute a purchase or sale. Cimetrix does not argue that the transaction

---

**8.** To establish a primary liability claim under § 10(b), a plaintiff must prove: (1) that the defendant made an untrue statement of material fact, or failed to state a material fact; (2) that the conduct occurred in connection with a purchase or sale of a security; (3) that the defendant made the statement or omission with scienter; and (4) that the plaintiff relied on the misrepresentation, and sustained damages as a proximate result of the misrepresentation. *Anixter v. Home–Stake Prod. Co.,* 77 F.3d 1215, 1225 (10th Cir.1996).

At least one other court has described a claim of § 10(b) liability based on an agency theory as a claim for "primary" liability. *In re Cirrus Logic Sec. Litig.,* No. C–93–1591, 1996 WL 637459, at *17 n. 11 (N.D.Cal. Nov. 1, 1996) (to be published at 946 F.Supp. 1446).

**9.** During oral argument, Plaintiff requested leave to amend its complaint in order to add a § 20(a) claim. The court finds that Defendants would not be prejudiced by allowing Plaintiff to amend. Thus, the court grants Plaintiff leave to amend to add this claim. Fed.R.Civ.Pro. 15(a).

**10.** An element distinct from the "purchase or sale" requirement is the "purchaser-seller" standing rule. "The purchaser/seller standing limitation in Rule 10b–5 damages actions ... does not stem from a construction of the phrase 'in connection with the purchase or sale of any security.' Rather, it rests on the relationship between § 10(b) and other provisions of the securities laws ... and the practical difficulties in granting standing in the absence of an executed transaction...." *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 284, 112 S.Ct. 1311, 1326, 117 L.Ed.2d 532 (1992) (O'Connor, J., concurring) (citations omitted).

In order to have standing to maintain a private action under § 10(b) and Rule 10b–5, a plaintiff must have been either a purchaser or seller of the securities underlying the fraud, material omission, or misstatement. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 733–49, 95 S.Ct. 1917, 1924–32, 44 L.Ed.2d 539 (1975). Thus, even if it can be established that a defendant engaged in wrongdoing "in connection with the purchase or sale of a security," a private plaintiff does not have standing to recover under the securities laws unless that plaintiff was a purchaser or seller of the securities at issue. In this case, if the transaction between Plaintiff and Cimetrix was a purchase or sale, then there is no dispute that Plaintiff is a "seller."

fails as a purchase or sale merely because it involved a transfer of securities from a security holder back to the issuing corporation. Various courts have held, and this court agrees, that such transactions may qualify as a purchase or sale within the meaning of § 10(b) and Rule 10b–5.[11] *Frigitemp Corp. v. Financial Dynamics Fund,* 524 F.2d 275, 281–82 (2d Cir.1975) (contribution of shares by shareholders could be a "sale"); *Drachman v. Harvey,* 453 F.2d 722, 736–38 (2d Cir.1971) (rehearing en banc 1972) (redemption of debentures constitutes a "purchase"); *Dasho v. Susquehanna Corp.,* 380 F.2d 262, 266 (7th Cir.1967) (acquisition by surviving corporation of its own shares in a merger with another corporation constitutes a "purchase"); *Green v. Hamilton Int'l Corp.,* 437 F.Supp. 723, 727 (S.D.N.Y.1977) (following *Drachman, supra* ). Instead, Cimetrix argues that the transaction does not constitute a purchase or sale because there was no monetary consideration flowing to Plaintiff.

The Tenth Circuit has not established a full analytical framework for determining what constitutes a purchase or sale for purposes of § 10(b). However, following the lead of several other jurisdictions, the court concludes that an exchange of value or consideration, while helpful to establish a purchase or sale, is not determinative.[12] *See Rathborne v. Rathborne,* 683 F.2d 914, 920 (5th Cir.1982) ("[T]he fact that no 'value' was

paid is not necessarily dispositive."); *Frigitemp Corp,* 524 F.2d at 281 ("[T]he mere absence of consideration in a stock disposition does not necessarily prevent the transaction from being a 'sale' for § 10(b) purposes."); *International Controls Corp. v. Vesco,* 490 F.2d 1334, 1346 (2d Cir.1974) ("[W]e find the rote emphasis on consideration inconsistent with the broad scope of protection under § 10(b) for those who engage in transactions eventuating in the acquisition or disposition of securities."); *see also Broad v. Rockwell Int'l Corp.,* 614 F.2d 418, 437–38 (5th Cir.1980) (not listing "consideration" as a factor for analyzing "purchase or sale" requirement). Instead, the court believes that there are other, equally important factors to consider.

### a. Textual Definitions

To determine the meaning of the terms "purchase" and "sale" in connection with § 10(b), the court must first look to the statutory definitions of those terms. *See Central Bank v. First Interstate Bank,* 511 U.S. 164, 174–75, 114 S.Ct. 1439, 1446–1447, 128 L.Ed.2d 119 (1994) (beginning analysis of securities laws by looking at text); *Pinter v. Dahl,* 486 U.S. 622, 641, 108 S.Ct. 2063, 2075–76, 100 L.Ed.2d 658 (1988) (same); *Chiarella v. United States,* 445 U.S. 222, 226, 100 S.Ct. 1108, 1113–14, 63 L.Ed.2d 348 (1980) (same). The 1934 Act provides: "The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire." 15 U.S.C. § 78c(a)(13). Also: "The terms 'sale' and

---

**11.** The Code of Federal Regulations, Rule 10b–18, provides a "safe harbor" from liability under § 9(a)(2) and § 10(b) of the 1933 Act in connection with certain purchases by an issuer of the issuer's common stock. 17 C.F.R. § 240.10b–18; *see* 47 Fed.Reg. 5333–41. This rule is not at issue in this case.

**12.** In light of this conclusion, the court declines to address Plaintiff's assertion that value was given.

Cimetrix cites to *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), in support of its position that consideration is required. In *Pinter,* the Supreme Court ruled that a "seller" for purposes of § 12(1) of the 1933 Act is one who solicits securities sales for financial gain. Based on this holding, Cimetrix argues that a purchase or sale for purposes of § 10(b) must also involve financial gain. The court rejects this argument. The Supreme Court has deter-

mined that the defining of the terms "purchase or sale" must be done in the context of § 10(b) and not any other section. "Congress itself has cautioned that the same words may take on a different coloration in different sections of the securities laws.... We must therefore address ourselves to the meaning of the words 'purchase or sale' in the context of § 10(b). Whatever these or similar words may mean in the numerous other contexts in which they appear in the securities laws, only this one narrow question is presented here." *SEC v. National Sec.,* 393 U.S. 453, 466, 89 S.Ct. 564, 571–72, 21 L.Ed.2d 668 (1969). For an example of differing definitions of purchase and sale even within the 1934 Act, compare *International Controls Corp. v. Vesco,* 490 F.2d 1334, 1346 (2d Cir.1974) (in context of § 10(b) of 1934 Act, consideration is not required for a "purchase" or "sale") with *Shaw v. Dreyfus,* 172 F.2d 140 (2d Cir.1949) (in context of § 16(b) of 1934 Act, consideration is required for a "purchase" or "sale").

'sell' each include any contract to sell or otherwise dispose of." *Id.* § 78c(a)(14).[13]

However, the Supreme Court has stated that the definitions of "purchase" and "sale" in the 1934 Act are "for the most part unhelpful" because they only declare generally that the terms shall include contracts to purchase or sell. *SEC v. National Sec.*, 393 U.S. 453, 466, 89 S.Ct. 564, 571–72, 21 L.Ed.2d 668 (1969). The definitions are also unhelpful because they are prefaced with the phrase "unless the context otherwise requires." [14] 15 U.S.C. § 78c(a). Thus, the Supreme Court has held that when the statutory definitions of "purchase" or "sale" are not helpful in the context of a given case, a court must ask whether the conduct in question "is the type of fraudulent behavior which was meant to be forbidden by the statute and the rule." *National Sec.*, 393 U.S. at 467, 89 S.Ct. at 572. The court concludes that the definitions in the 1934 Act are not helpful in the present case and therefore, as *National Securities* directs, the court must analyze the challenged conduct in light of the purposes behind the 1934 Act.

### b. *Purposes of the Securities Exchange Act of 1934*

The Supreme Court has acknowledged that it is not "able to divine from the language of § 10(b) the express 'intent of Congress' as to the contours of a private cause of action under Rule 10b–5." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737, 95 S.Ct. 1917, 1926, 44 L.Ed.2d 539 (1975). It is well understood, however, that Congress intended § 10(b) and Rule 10b–5 to be flexible antifraud provisions designed to protect investors and the securities market from a broad array of fraudulent behavior. *See, e.g., Chiarella*, 445 U.S. at 226, 100 S.Ct.

at 1113 ("Section 10(b) was designed as a catchall clause to prevent fraudulent practices."); *National Sec.*, 393 U.S. at 466, 89 S.Ct. at 572 ("Section 10(b) and Rule 10b–5 together constitute one of the several broad antifraud provisions contained in the securities laws."); *see also* 3 Fletcher Cyclopedia of Corporations, § 900.65, at 456 (perm. ed. 1994) ("The general purpose and intent of the broad anti-fraud provisions of Section 10(b) and Rule 10b–5 is to protect investors, to prevent inequitable and unfair practices and to insure fairness in securities transactions generally.").

With this general view of § 10(b), the Supreme Court has stated that "[s]ection 10(b) must be read flexibly, not technically and restrictively." *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971); *see also SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 195, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963) (noting that Congress intended securities legislation, enacted for the purpose of avoiding frauds, to be construed "not technically and restrictively, but flexibly to effectuate its remedial purposes"). Indeed, the Supreme Court has interpreted terms in the Securities Exchange Act of 1933 and the 1934 Act in a manner which "embodies a flexible rather than static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *See Tcherepnin v. Knight*, 389 U.S. 332, 338, 88 S.Ct. 548, 554, 19 L.Ed.2d 564 (1967); *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946).[15] Courts must

---

**13.** The 1934 Act's definition of "buy" "purchase" "sale" and "sell" appears more liberal than the definition of "sale" or "sell" in the Securities Exchange Act of 1933. (The 1933 Act does not define "buy" or "purchase.") Section 2(3) of the 1933 Act states "The term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, *for value*." 15 U.S.C. § 77b(3) (emphasis added). The words "for value" in the 1933 Act's definition are not found in the 1934 Act's definitions.

**14.** The 1933 Act's definitions are prefaced with the same phrase. 15 U.S.C. § 77b.

**15.** Although flexible, the court is cognizant that the Supreme Court has made it increasingly

clear that § 10(b)'s reach is not unlimited and has "cautioned against too freely allowing causes of action through expanded definitions under the antifraud provisions" of the 1934 Act. *Broad v. Rockwell Int'l Corp.*, 614 F.2d 418, 435–36 (5th Cir.1980); *see, e.g., Santa Fe Indus. v. Green*, 430 U.S. 462, 477–78, 97 S.Ct. 1292, 1302–04, 51 L.Ed.2d 480 (1977); *Blue Chip Stamps*, 421 U.S. at 733 n. 5, 737, 95 S.Ct. at 1924 n. 5, 1926; *see also, Anderson v. Dixon*, No. 95–4119, 1996 WL 276183, at *2 (10th Cir. May 24, 1996) (" 'The securities law does not reach every conversion or theft of a security. Section 10(b) is not violated by a fraudulent scheme that, some time after a purchase of securities, divests the purchaser of ownership.' " (quoting *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 598 (2d Cir.1991))).

look to see whether the defendant's "alleged conduct is the type of fraudulent behavior which was meant to be forbidden by the statute and the rule" and ask whether "[t]he broad anti-fraud purposes of the statute and the rule would clearly be furthered by their application to this type of situation." *National Sec.*, 393 U.S. at 467, 89 S.Ct. at 572. Following this counsel, and to effectuate the remedial purposes of § 10(b), courts have construed the terms "purchase" and "sale" broadly, regardless of what these or similar words might mean in the common law or other contexts, and as going beyond the garden-variety cash-for-stock transactions. *See, e.g., id.* at 466, 89 S.Ct. at 571–72 (exchange of shares in a merger); *Knauff v. Utah Constr. & Mining Co.*, 408 F.2d 958, 961 (10th Cir.1969) (same); *Drachman*, 453 F.2d at 736 (redemption of convertible debentures); *Vine v. Beneficial Fin. Co.*, 374 F.2d 627 (2d Cir.1967) ("forced seller" doctrine).

To determine whether a transaction is a purchase or sale within the flexible reading of § 10(b), courts must inquire into the economic reality and commercial substance of a particular transaction. Several factors have so far emerged in this inquiry: 1) whether a transfer of ownership or control of the security occurred; 2) whether consideration or value was given; 3) whether, in appropriate contexts, there was a change in the fundamental nature of the security; and 4) whether the transaction had a direct effect on the conduct of the securities market. *See Rathborne*, 683 F.2d at 919–20; *Broad*, 614 F.2d at 435–38; *Vesco*, 490 F.2d at 1343; *Gelles v. TDA Indus.*, No. 90–Civ–5133, 1993 WL 275216, at *6–11 (S.D.N.Y. July 16, 1993); *see also Carter v. Signode Indus.*, 694 F.Supp. 493, 497 (N.D.Ill.1988) (asking whether the plaintiffs had made a "significant investment decision"); *Ahern v. Gaussoin*, 611 F.Supp. 1465, 1478 (D.Or.1985) ("In general, a 'purchase' has occurred when the plaintiff has taken action representing a new decision to invest.").

In this case, Plaintiff alleges that he transferred 215,000 shares in Cimetrix back to Cimetrix and that he did so solely because Bilzerian characterized the transfer as necessary to protect Cimetrix from an SEC inves-

tigation and the value of other shares. Unlike many § 10(b) cases, the fraud alleged in this case does not go to the value of the securities transferred; instead, the fraud goes to whether the transfer was necessary. The court finds that the alleged transaction deprived Plaintiff of ownership and actual control over the 215,000 shares. The court also finds that the transaction directly affected the securities market in that the alleged misstatements inducing the transfer concerned the status of the issuing company, thereby affecting the ability of Plaintiff to make a knowing investment decision. Based on these two findings, the court concludes that the alleged action "is the type of fraudulent behavior which was meant to be forbidden by the statute or rule," and "[t]he broad anti-fraud purposes of the statute and the rule would clearly be furthered by their application to this type of situation." *National Sec.*, 393 U.S. at 467, 89 S.Ct. at 572. Accordingly, Plaintiff's transfer of stock to Cimetrix constituted a purchase or sale under § 10(b).

### 3. *Sufficiency of the Allegations*

Claims under the securities laws must conform to Federal Rule of Civil Procedure 9(b). That rule provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To satisfy Rule 9(b)'s particularity requirement, a claim of fraud brought under § 10(b) and Rule 10b–5 must detail " 'what misrepresentations were made by the defendant, to whom these misrepresentations were made, when these misrepresentations were made, [and] how these misrepresentations furthered the alleged fraudulent scheme.' " *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir.1992) (quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990)).

The court concludes, and Cimetrix does not argue otherwise, that Plaintiff has sufficiently plead a § 10(b) claim under these guidelines. However, Cimetrix argues that Plaintiff's § 10(b) claim must be dismissed because the alleged misstatements are insuf-

ficient to support a § 10(b) claim. According to Cimetrix, the statements, if said, were merely speculations of possible future events and such predictions, by themselves, are not misrepresentations and therefore cannot be a basis of a § 10(b) claim.

The court rejects this blanket statement. An opinion or prediction can be a misrepresentation to the extent that a defendant misstates the facts underlying the opinion or prediction. Plaintiff's allegations show more than the puffing-type speculation of future prices or profits which has been held not to be fraud or a misrepresentation. Bilzerian's prediction that the SEC may investigate Cimetrix or that the value of Cimetrix's stock may decline is not the crux of Plaintiff's claim. Instead, Plaintiff complains of Bilzerian's underlying misstatements: that an SEC investigation or decline in stock value would result if Plaintiff did not return a large chunk of shares. Thus, the court holds that Bilzerian's alleged misstatements may be the basis of a § 10(b) claim.

### B. *Common–Law Fraud*

Plaintiff's eighth cause of action alleges that Cimetrix, through its agent Bilzerian, fraudulently induced Plaintiff into entering into two transactions: one occurring in March 1994 and the other being the November or December 1994 transaction in which Plaintiff transferred approximately 215,000 shares of Cimetrix stock back to Cimetrix. Plaintiff now agrees that Cimetrix cannot be held liable for fraud relating to the March 1994 transaction and thus the court will dismiss Plaintiff's eighth claim relating to that transaction. Cimetrix contends that Plaintiff's fraud claim relating to the November or December 1994 transaction must also be dismissed for being inadequately plead under Rule 9(b). Alternatively, Cimetrix requests that the court order Plaintiff to provide a more definite statement.[16]

For the most part, the allegations supporting Plaintiff's eighth claim involve the March 1994 transaction. Although Plaintiff alleges some facts involving the November or December transaction, the court concludes that the eighth claim is so ambiguous regarding

this transaction that Cimetrix is entitled to a more definite statement. Fed.R.Civ.Pro. 12(e).

### IV. *ORDER*

Accordingly, based on the foregoing and good cause appearing, IT IS HEREBY ORDERED that:

1. Defendant Cimetrix's motion for judgment on Plaintiff's third claim for relief is denied.

2. Defendant Cimetrix's motion for judgment on Plaintiff's eighth claim for relief relating to the March 1994 transaction is granted.

3. Defendant Cimetrix's motion for judgment on Plaintiff's eighth claim for relief relating to the November or December 1994 transaction is denied.

4. Defendants Cimetrix's request for a more definite statement regarding Plaintiff's eighth claim for relief is granted.

5. Plaintiff's request for leave to amend to add a claim under § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), is granted.

---

16. To the extent that Cimetrix argues that Plaintiff's eighth claim should be dismissed because the alleged fraudulent statements were merely speculation or predictions which cannot support a fraud claim, the court denies the motion.