**D.E.B. ADJUSTMENT CO., Plaintiff-Appellee,**

v.

**Burton L. CAWTHORNE, Defendant-Appellant.**

No. 79CA0377.

Colorado Court of Appeals, Div. II.

Jan. 8, 1981.

Davis & Michael, Robert C. Abelman, Denver, for plaintiff-appellee.

Law Offices of Burton L. Cawthorne, Burton L. Cawthorne, Denver, for defendant-appellant.

VAN CISE, Judge.

Burton Cawthorne (debtor) appeals a deficiency judgment awarded plaintiff D.E.B. Adjustment Co. on debtor's promissory note. We affirm.

On September 4, 1975, debtor executed a promissory note and security agreement in favor of the Bank of Denver (the bank) and granted the bank a security interest in his 1970 Volvo. The trial court found that, under the terms of the agreement, debtor was required to obtain insurance on the Volvo with a loss payable clause in favor of the bank. The agreement also provided:

"If default shall occur under any provisions of this document . . . [the bank] may take immediate possession of the Collateral . . . and may exercise any rights and remedies granted secured parties by Article 9 of the Uniform Commercial Code upon default by debtors under a security agreement. . . ."

On September 8, the bank sent a letter to debtor indicating that it had discovered that debtor did not have insurance covering the Volvo and that proof of coverage was expected within 15 days from the receipt of the letter. Debtor never did obtain the required insurance.

Effective October 28, 1975, the General Assembly amended the Uniform Consumer Credit Code (U.C.C.C.), § 5–1–101 et seq., C.R.S.1973. Section 5–5–111, C.R.S.1973 (1979 Cum.Supp.), was added. It provides, in part:

"With respect to a consumer credit transaction, after a debtor has been in default for ten days for failure to make a required payment and has not voluntarily surrendered possession of goods that are collateral, a creditor may give the debtor the notice described in this section. A creditor gives notice to the debtor pursuant to this section when he . . . mails the notice to him at his residence, as defined in section 5–1–201(7)."

Section 5–5–112, C.R.S. 1973 (1979 Cum. Supp.), also was added. It provides, in pertinent part:

"With respect to a consumer credit transaction, . . . after a default consisting only of the debtor's failure to make a required payment, a creditor, because of that default, may neither accelerate maturity of the unpaid balance of the obligation nor take possession of or otherwise enforce a security interest in the goods that are collateral until twenty days after a notice of the debtor's right to cure (section 5–5–111) is given. Until the expiration of the minimum applicable period after the notice is given, the debtor may cure all defaults of all unpaid sums due at the time of the tender, without acceleration . . . . Cure restores the debtor to his rights under the agreement as though the defaults had not occurred."

Here, the agreement between the bank and debtor was a consumer credit transaction. *See* §§ 5–1–301(6.5) and 5–3–104, C.R.S. 1973 (1979 Cum.Supp.). Thus, §§ 5–5–111 and 5–5–112, C.R.S. 1973 (1979 Cum.Supp.), if applicable, would modify the September 4 agreement insofar as it relates to the bank's rights upon default.

Debtor failed to make a monthly payment on November 20, and on December 16, 1975, the bank sent a notice, consistent with §§ 5–5–111 and 5–5–112, C.R.S. 1973 (1979 Cum.Supp.), indicating that $100 was past due and that debtor had until January 5 to pay $100 or the bank would exercise its rights under the law. On December 19, 1975, the bank repossessed the Volvo. According to debtor's testimony, he contacted the bank following the repossession and was informed that he would have to tender the full amount of the September 4 note in order to get his car back. Apparently, debtor never attempted to tender the $100 payment called for in the December 16 notice. The car was sold on December 29, and the bank assigned the promissory note to plaintiff for the purpose of collecting the deficiency.

At trial, a bank employee testified that the Volvo had been repossessed because of debtor's failure to make the November 20 payment and because of his failure to have insurance, as required by the agreement. If this testimony was true, then §§ 5–5–111 and 5–5–112, C.R.S. 1973 (1979 Cum.Supp.), would have been inapplicable, and the bank could have repossessed immediately upon default and with no notice of default. *See* § 4–9–503, C.R.S. 1973. However, the trial court found that the December 16 notice was sent in compliance with §§ 5–5–111 and 5–5–112, C.R.S. 1973 (1979 Cum.Supp.), that the bank was bound by the notice once it was sent, and that the bank violated § 5–5–112, C.R.S. 1973 (1979 Cum.Supp.), by repossessing the car prior to the expiration of the 20 day cure period. On the other hand, the court found that inasmuch as debtor failed to tender the $100, debtor was not entitled to the windfall of avoiding liability based on the bank's violation. Therefore, the court awarded plaintiff the

balance due on the note, $4,102.13, but reduced that amount by $1,079 as a penalty for the bank's violation.

In assessing the penalty, the court found that the U.C.C.C. provides no sanction for violations of § 5–5–112, C.R.S. 1973 (1979 Cum.Supp.), but that § 4–9–507, C.R.S. 1973, which establishes a secured party's liability for failure to comply with U.C.C. statutes governing a secured party's rights upon a debtor's default, would be an appropriate sanction for violation of § 5–5–112, C.R.S. 1973 (1979 Cum.Supp.). Under § 4–9–507, C.R.S. 1973, if the collateral is disposed of by the noncomplying creditor, the debtor is entitled to recover any loss caused by the noncompliance, or, if the collateral is consumer goods, the debtor has the alternative of recovering a statutory penalty of "an amount not less than the credit service charge plus ten percent of the principal amount of the debt ...." Here, no loss having been proved by debtor, the court reduced plaintiff's recovery by the statutory penalty.

I.

■ Plaintiff contends on appeal that since the bank repossessed the car because of debtor's failure to make a payment *and* his failure to procure insurance, § 5–5–112(1), C.R.S. 1973 (1979 Cum.Supp.) did not apply, and the trial court erred in finding that the bank had violated that section. Plaintiff also contends that if § 5–5–112(1), C.R.S. 1973 (1979 Cum.Supp.), was applicable and was violated, the statute's failure to specify a sanction mandates that debtor's recovery for the violation should be based on common law principles. And, debtor having failed to prove any loss resulting from the wrongful repossession, plaintiff asserted it was entitled to the full amount of the note. Plaintiff failed to raise these issues in a C.R.C.P. 59 motion and failed to file a cross-appeal. Therefore, these issues will not be considered here. *Furer v. Allied Steel Co.*, 174 Colo. 171, 483 P.2d 212 (1971). *See City of Delta v. Thompson*, 37 Colo.App. 205, 548 P.2d 1292 (1975).

## II.

■ Debtor first contends that the trial court erred in finding that the December 16 notice complied with §§ 5–5–111 and 5–5–112, C.R.S. 1973 (1979 Cum.Supp.), where the notice was sent to his business address and not to his residence. He asserts that although he gave his business address as his address for purposes of notification in the September 4 note and agreement, the bank knew the address of his actual residence and was required to send the notice there. We disagree.

Debtor's "residence," for purposes of § 5–5–111, C.R.S. 1973 (1979 Cum.Supp.), "is the address given by him as his residence in any writing signed by him in connection with a credit transaction." Section 5–1–201(7), C.R.S. 1973. The bank did not violate § 5–5–111, C.R.S. 1973 (1979 Cum. Supp.), by mailing the December 16 notice to the address given by debtor in the agreement. In any event, there is no dispute that debtor received the notice.

## III.

Debtor also contends that the trial court erred in using § 4–9–507, C.R.S. 1973, to assess a penalty for the bank's violation of § 5–5–112, C.R.S. 1973 (1979 Cum.Supp.). He asserts that if the collateral is wrongfully repossessed, the creditor cannot thereafter claim that the obligation is in default and is therefore barred from seeking any deficiency judgment. We disagree.

■ Neither § 5–5–112, C.R.S. 1973 (1979 Cum.Supp.), nor any other provision of the U.C.C.C., provides a specific remedy to debtors for a creditor's wrongful repossession. However, § 5–1–103, C.R.S. 1973, provides that: "Unless displaced by the particular provisions of this code, the 'Uniform Commercial Code' and the principles of law and equity . . . supplement the provisions of this code." When the Volvo was repossessed prior to the expiration of the cure period, debtor had various remedies at law or equity to recover possession of the collateral or restrain its sale. *See, e.g., Mason v. General Machinery & Supply Co.,* 91 Colo. 69, 11 P.2d 802 (1932) (replevin). However, no action was taken and the car was sold.

Under § 5–1–103, C.R.S. 1973, the trial court did not err in finding that the appropriate penalty for the bank's violation was the penalty imposed by § 4–9–507(1), C.R.S. 1973. That section would apply where a creditor wrongfully repossessed collateral under the U.C.C., a situation analogous to the one here. *See* § 4–9–503, C.R.S. 1973. Debtor would have been entitled to recover any loss caused by the bank's violation, *see* § 4–9–507(1), C.R.S. 1973, but he was not barred from any recovery by his failure to prove his loss. Because the collateral disposed of was consumer goods, debtor was entitled to have the statutory penalty set off against plaintiff's recovery. *See* § 4–9–507(1), C.R.S. 1973.

Judgment affirmed.

COYTE and SMITH, JJ., concur.