Robert NATION, Gary Hanes, Larry Fenstermaker, Douglas Noe, Robert Lender, James Tippel, George Johnson, Buster Stevens, Forest Anderson, Fred Bustillos, Eddie Ornelas, and Charles Kaptain, Plaintiffs-Appellees,

v.

CITY AND COUNTY OF DENVER, a Municipal Corporation; William H. McNichols, Mayor, City and County of Denver; Daniel P. Cronin, Manager of Safety, City and County of Denver; Arthur C. Dill, Chief of Police of the City and County of Denver; The Civil Service Commission of the City and County of Denver, consisting of: Ted Bach, Jesse Manzanares and Oswald Abernathy, and Robert Danhour, Defendants-Appellants.

No. 80CA1231.

Colorado Court of Appeals,
Div. I.

March 1, 1984.

As Modified on Denial of Rehearing
April 5, 1984.

Certiorari Denied Aug. 7, 1984.

Geer & Goodwin, P.C., Robert E. Goodwin, Denver, for plaintiffs-appellees.

Max P. Zall, City Atty., Robert D. Dowler, Asst. City Atty., Denver, for defendants-appellants.

BERMAN, Judge.

Defendants appeal, first, the trial court's ruling that Denver's chief of police was without authority to alter the badges of

plaintiffs (police radio engineers) to read: "Radio Engineers" instead of "Denver Police"; and, second, the trial court's order permanently enjoining defendants from treating plaintiffs as other than police officers. We reverse.

On September 3, 1976, the defendant police chief wrote to the superintendent of radio engineers of the Denver Police Department, directing: (1) that the badges of radio engineers be changed to read "Radio Engineers" instead of "Denver Police" and (2) that police radio engineers, from that time forward, would be precluded from carrying firearms or firing for monthly firearms qualifications because of a lack of certification. The police chief's orders were carried out.

On June 14, 1977, plaintiffs, twelve radio engineers of the Denver Police Department, brought suit against various officials of Denver, seeking relief from the police chief's September 1976 directives. A trial to the court was held in April 1978.

Meanwhile, in November 1976, the Denver voters rejected a proposed council bill which, if passed, would have removed the ranks of superintendent of radio engineers and radio engineers from the classified service of the Denver Police Department. In September 1978, Denver voters amended Denver City Charter § C5.46–2(2) in such a way as to prohibit *further* appointments of radio engineers from being included under the classified service of the police department subsequent to September 12, 1978.

Finally, in May 1980, the trial court issued its findings of fact, conclusions of law, permanent injunction, and declaratory judgment. Among its findings, the court specifically declared that the superintendent of radio engineers and the radio engineers are police officers of the Denver Police Department, that they must be allowed to wear police badges displaying "Police Officer" as do other police officers, but that their wearing of weapons was a matter unique to the administrative authority of the chief of police and the manager of safety.

In addition, the court permanently enjoined defendants from "pursuing any practice or policy of excluding the ranks of superintendent of radio engineers and radio engineers from their positions as police officers of the City and County of Denver and State of Colorado, and as provided by the Charter and Rules and Regulations of the Civil Service Commission." The court further declared that any attempt or practice by any of the defendants to modify, alter, or disturb the ranks of superintendent of radio engineers and radio engineers was thereafter to be considered null, void, and illegal. This appeal followed.

The sole issue on appeal is whether the trial court erred in ordering defendants to return to the radio engineers and their superintendent police badges displaying the legend "Police Officer" and in enjoining defendants from pursuing any policy or practice which would exclude radio engineers and their superintendent from "their positions as police officers of the City and County of Denver." We hold that the trial court did so err.

■ We note, first, that defendants possessed the authority to change the description on plaintiffs' badges. The Denver City Charter § 5.73, which all parties agree is controlling, provides that the duties and conduct of members in the classified service of the police department shall be governed by rules promulgated by the chief of police. This delegation of authority necessarily includes the authority to specify the design of any badge to be worn by radio engineers and their superintendent, including any inscription thereon. *See Ford v. Civil Service Commission*, 36 Colo.App. 55, 534 P.2d 829 (1975). For the police chief's order to change the design of the radio engineers' badges amounted to nothing more than the governing of the radio engineers' authority and duties in such a way as to restrict them from acting or representing themselves to be police officers.

■ Second, defendants' action in differentiating plaintiffs' badges from those of law enforcement officers constitutes rea-

sonable action to curtail the liability of the Denver Police Department under the agency doctrines of apparent authority and vicarious liability by estoppel. *See J.D. Hynes, Agency & Partnership* 130–133, 200 (2d ed. 1983). Under the doctrine of apparent authority, a principal who by his words or conduct has caused another reasonably to believe that the principal has authorized his agent to take some action, is liable as if that action were authorized. *Russell v. First American Mortgage Co.*, 39 Colo. App. 360, 565 P.2d 972 (1977). "Agency by estoppel is generally deemed to be closely related to apparent authority.... Thus, alternatively stated, a principal who clothes his agent with apparent authority is estopped to deny such liability." *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781 (3d Cir.1978). These definitions of apparent authority and vicarious liability by estoppel are sufficiently comprehensive to embrace tort liability as well as contractual liability. *Drexel v. Union Prescription Centers, Inc., supra; Mabe v. B.P. Oil Corp.*, 31 Md.App. 221, 356 A.2d 304 (1976), *rev'd on other grounds*, 279 Md. 632, 370 A.2d 554 (1977).

■ A "police officer" is defined as "one of the staff of [persons] employed in cities and towns to enforce ... the laws and ordinances for preserving the peace and good order of the community." *Black's Law Dictionary* 1317 (rev. 4th ed. 1968). Obviously, plaintiffs herein do not fit this description: They were not trained at the police academy to make arrests, execute search warrants, discharge firearms, patrol the streets, handle disturbances, or carry out any of the regular duties of a police officer. Plaintiffs are radio engineers, and, as such, their responsibilities are limited to the efficient operation of the transmitter and all auxiliary equipment of the radio transmitter.

Were the Denver Police Department to manifest to the general public, through the issuance of police officer badges, that radio engineers are authorized to act as police officers, the defendants might be subject to liability, under the doctrines of apparent

authority and vicarious liability by estoppel, for the tortious acts of radio engineers far beyond the scope of their intended employment. The scope of the defendants' liability would be broadened to encompass the tortious execution of all acts within the plaintiffs' apparent authority, including such acts as making arrests, executing search warrants, engaging in high speed squad car chases, and firing weapons.

Given the fact that plaintiffs here are in the classified service and even if we assume, *arguendo*, that the definition sections of the Civil Service Commission Rules or the Denver City Charter implicitly include the plaintiff radio engineers in the categories of "officer" or "policeman," it does not necessarily follow that radio engineers must be allowed to wear badges identifying themselves to the public as persons possessing all the authority and academy training which the public generally ascribes to the title of "police officer." The overwhelming weight of the evidence shows that the radio engineers have neither the training and experience, nor the regular duties of law enforcement officers. In fact, a number of the radio engineers have specifically voiced their distaste for taking on the 24-hour responsibilities of law enforcement officers.

We therefore hold that defendants' actions in issuing different badges for radio engineers than for law enforcement officers not only was authorized, it was eminently reasonable. Hence, the trial court committed a gross abuse of discretion when it ordered the police department needlessly to subject itself to such overextended liability. Likewise, the trial court's entry of a permanent injunction interfering with defendants' duties under the Denver City Charter was an abuse of discretion.

The plaintiffs and the trial court seem to be somewhat concerned about the possible deprivation of future benefits to plaintiffs if the trial court's ruling and injunction is reversed. However, plaintiffs have failed to prove any causal connection between a change on the inscription of their badges and the loss of any tangible benefit to

which they are entitled under the Denver City Charter, the Denver Civil Service Regulations, or the Police Department Rules and Regulations. If such eventualities were to become manifest, then an appropriate legal remedy could be invoked. However, as for now, this court will not speculate on the legality or illegality of possible future conduct by defendants in their treatment of plaintiffs because there exists at present no case or controversy as to these speculative issues.

Finally, although there is some discussion by plaintiffs as to the propriety of the trial court's determination that it is within the defendants' discretion to disallow plaintiffs' carrying of firearms while on the job, plaintiffs filed no cross-appeal; hence, that issue was not preserved for our consideration. *D.E.B. Adjustment Co. v. Cawthorne*, 623 P.2d 82 (Colo.App.1981).

Judgment reversed.

PIERCE and METZGER, JJ., concur.