Colleen DALY, Plaintiff–Appellant,

v.

ASPEN CENTER FOR WOMEN'S HEALTH, INC., Defendant–Appellee.

No. 04CA0904.

Colorado Court of Appeals, Div. IV.

Oct. 6, 2005.

Certiorari Denied May 1, 2006.

Oates, Knezevich & Gardenswartz, P.C., Ted D. Gardenswartz, Aspen, Colorado, for Defendant–Appellee.

RUSSEL, J.

This case concerns a corporation's liability for the alleged negligence of a physician. Plaintiff, Colleen Daly, appeals from the judgment entered in favor of defendant, Aspen Center for Women's Health, Inc. (ACWH). We affirm.

## I. Background

In 1998, Daly was referred to a doctor who worked at ACWH, a corporation owned by nurse midwives. The doctor examined Daly and subsequently performed surgery. The doctor also provided follow-up treatment for bleeding related to the procedure. Daly alleges that, during this follow-up visit, the doctor negligently dispensed medication, causing her to suffer a stroke.

Daly filed suit against the doctor and ACWH in Pitkin County. She did not claim that ACWH had been negligent. Instead, she asserted various theories to hold ACWH accountable for the doctor's alleged negligence. The trial court rejected Daly's theories and granted summary judgment in favor of ACWH.

Later, venue was transferred to the City and County of Denver. Exercising its discretionary authority under C.R.C.P. 54(b), the court entered final judgment in favor of ACWH on the order granting summary judgment.

## II. Standard of Review

Summary judgment should be granted only if it is clear that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo.1999). The nonmoving party must be given the benefit of all inferences drawn from the undisputed facts. *HealthONE v. Rodriguez,* 50 P.3d 879, 887 (Colo.2002). We review de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.,* 901 P.2d 1251, 1256 (Colo.1995).

Freeman & Freeman, P.C., Martin H. Freeman, Aspen, Colorado, for Plaintiff–Appellant.

## III. Discussion

Daly contends that the trial court erred in granting summary judgment in favor of ACWH. She raises several arguments, which we consider and reject as follows.

### A. Actual Agency Theories

Daly argues that ACWH may be held accountable for the doctor's alleged negligence on principles of actual agency. We conclude that Daly cannot prevail on theories of (1) respondeat superior, (2) inherent agency power, or (3) nonservant agent.

#### 1. Respondeat Superior

■ The doctrine of respondeat superior is based on the theory that the employee is the agent of the employer. *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320–21 (Colo.1992). It requires a special kind of agency relationship—a master-servant relationship in which the employer has the right to control the employee's performance. *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 472–73 (Colo.1995); W. Seavey, *Handbook of the Law of Agency* § 84.C (1964) (Seavey).

■ As a general rule, the doctrine of respondeat superior cannot give rise to vicarious liability when negligent work is performed by an independent contractor. *W. Stock Ctr., Inc. v. Sevit, Inc.*, 195 Colo. 372, 377–78, 578 P.2d 1045, 1049 (1978); Restatement (Second) of Torts § 409 (1965). This is because an independent contractor, unlike an employee, is not subject to the principal's control. *See Norton v. Gilman*, 949 P.2d 565, 567 (Colo.1997) ("[T]he most important factor in determining whether a worker qualifies as an employee is the alleged employer's right to control the details of performance."); *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 148 (Ind.1999) ("The theory behind non-liability for independent contractors is that it would be unfair to hold a master liable for the conduct of another when the master has no control over that conduct.").

Daly contends that she presented sufficient evidence of a master-servant relationship. She alleges: (1) the doctor worked at ACWH's facility and was paid a salary; (2) ACWH billed for the doctor's services and kept the fees; and (3) ACWH owned all clinical records and arranged the doctor's appointments. ACWH argues that a master-servant relationship cannot exist because a written agreement specifies that the doctor is an independent contractor.

We need not entertain this debate about the evidence because we conclude that ACWH must prevail as a matter of law under the corporate practice of medicine doctrine.

■ The corporate practice of medicine doctrine rests on the idea that "it is impossible for a fictional entity, a corporation, to perform medical actions or be licensed to practice medicine." *Pediatric Neurosurgery, P.C. v. Russell*, 44 P.3d 1063, 1067 (Colo. 2002). Under this common law doctrine, a corporation may not employ doctors, perform medical services, or interfere with a doctor's independent medical judgment. *Pediatric Neurosurgery, P.C. v. Russell, supra*, 44 P.3d at 1067. Accordingly, the doctrine has shielded corporations from vicarious liability for the negligent acts of their physicians. *Pediatric Neurosurgery, P.C. v. Russell, supra*, 44 P.3d at 1067; *Moon v. Mercy Hosp.*, 150 Colo. 430, 433, 373 P.2d 944, 946 (1962); *Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372 (1944).

In some areas, the corporate practice of medicine doctrine has been altered by statute. Doctors now may be employees of hospitals, *see* § 25–3–103.7(2), C.R.S.2005, and professional service corporations owned by physicians. *See* § 12–36–134, C.R.S.2005. But the legislature has not approved corporate employment of physicians generally. *See* § 12–36–117(1)(m), C.R.S.2005 (it is "unprofessional conduct," to practice medicine as an employee of a corporation other than a hospital or professional service corporation). And even where such employment is permitted, the legislature has retained some features of the common law doctrine. *See* § 25–3–103.7(3), C.R.S.2005 ("Nothing in this section shall be construed to allow any hospital which employs a physician to limit or otherwise exercise control over the physician's independent professional judgment ...."); § 12–36–134(1)(f), C.R.S.2005 ("Nothing in

this article shall be construed to cause a professional service corporation to be vicariously liable to a patient or third person for the professional negligence or other tortious conduct of the physician who is a shareholder or employee of a professional service corporation.").

■ Because the Colorado Supreme Court continues to recognize the common law corporate practice of medicine doctrine, and because the legislature has not altered the doctrine with respect to corporations owned by nurse midwives, ACWH may not employ doctors, perform medical services, or interfere with a doctor's independent medical judgment. It therefore may not be held accountable under the doctrine of respondeat superior for the doctor's alleged negligence. *See Freedman v. Kaiser Found. Health Plan,* 849 P.2d 811, 816 (Colo.App.1992) (because a health maintenance organization is statutorily precluded from practicing medicine, it cannot direct the actions of the independent physicians with whom it contracts and thus cannot be held responsible for their actions under respondeat superior); *Rodriquez v. City & County of Denver,* 702 P.2d 1349 (Colo.App.1984) (because hospital had no authority to control professional medical decisions made by resident physicians, it could not be held liable for their actions under doctrine of respondeat superior).

### 2. Inherent Agency Power

Daly contends that ACWH may be held vicariously liable on a theory of inherent agency power. We disagree.

■ Inherent agency power is "the power of an agent which is derived not from authority, apparent authority or estoppel, but solely from the agency relation and exists for the protection of persons harmed by or dealing with a servant or other agent." Restatement (Second) of Agency § 8A (1958) (Restatement). It is a status-based form of vicarious liability. *In re Atl. Fin. Mgmt., Inc.,* 784 F.2d 29, 32 (1st Cir.1986).

■ Whether vicarious liability may by imposed for inherent agency power depends on the nature of the principal-agent relationship. In the context of a master-servant relationship, inherent agency power is the same thing as respondeat superior. *In re Atl. Fin. Mgmt., Inc., supra.* It thus may give rise to liability for torts committed by a servant in the scope of employment. Seavey, *supra,* § 8.F. In other contexts, inherent agency power may give rise to a principal's liability for an agent's misrepresentations, even if the agent is acting for his own purposes. *Grease Monkey Int'l, Inc. v. Montoya, supra,* 904 P.2d at 474 n. 5; *see In re Atl. Fin. Mgmt., Inc., supra,* 784 F.2d at 32.

Here, Daly has alleged a master-servant relationship between ACWH and the doctor. Thus, her theory of inherent agency power is nothing more than an argument under respondeat superior. And for the reasons stated above in part III.A.1 of this opinion, Daly's theory is defeated by the corporate practice of medicine doctrine.

■ Daly's argument would fail even if she had alleged a different sort of principal-agent relationship. The inherent agency power doctrine rests on the policy that the principal should "bear the burden of the losses created by the mistakes or overzealousness of its agents [because such liability] stimulates the watchfulness of the employer in selecting and supervising the agents." *In re Atl. Fin. Mgmt., Inc., supra,* 784 F.2d at 32 (quoting Seavey, *supra,* § 58.B). However valid, this policy cannot apply here because it would conflict with the principles underlying the corporate practice of medicine doctrine. We cannot impose vicarious liability to encourage more careful supervision of a doctor if the targeted entity is legally incapable of practicing medicine or supervising the doctor.

### 3. Nonservant Agent

Daly also contends that vicarious liability may be imposed because the doctor was a nonservant agent of ACWH. We disagree.

■ A nonservant agent is an independent contractor who has the power to bind the principal in contract. *Grease Monkey Int'l, Inc. v. Montoya, supra,* 904 P.2d at 472. Such a person might be, for example, an attorney or a broker. Restatement § 14N cmt. a.

Here, the record contains no indication that the doctor had the power to bind ACWH contractually. And Daly's factual allegations undermine her theory that the doctor was not a servant; as previously noted, she alleged that the doctor was ACWH's employee. Daly therefore cannot proceed on a theory that the doctor was a nonservant agent. *See Grease Monkey Int'l, Inc. v. Montoya, supra,* 904 P.2d at 474.

■ Moreover, even if the doctor were a nonservant agent, ACWH could not be held liable because Daly is claiming a negligent physical tort. Ordinarily, a principal is not liable for physical injuries caused by the negligence of a nonservant agent. *See Blanchard v. Ogima,* 253 La. 34, 215 So.2d 902, 907 (1968); *Jensen v. Medley,* 336 Or. 222, 82 P.3d 149, 154 (2003). This is true because a principal generally lacks the right to control the physical movements of a nonservant agent. Restatement § 250 cmt. a.

■ Because ACWH is considered incapable of supervising the doctor or controlling his performance under the corporate practice of medicine doctrine, it would be protected by the general rule of nonliability, even if the doctor could be considered a nonservant agent. And because ACWH is incapable of practicing medicine, it could not assume a duty of care that might otherwise support an exception to the general rule under the nondelegable duty doctrine. *See* Restatement §§ 214, 251 cmt. a (when principal has a nondelegable duty to protect others from the hazards of its enterprises and entrusts the performance of such duty to an agent, it is subject to liability for any harm caused by the agent's negligence); *cf. Camacho v. Mennonite Bd. of Missions,* 703 P.2d 598, 600–01 (Colo.App.1985) (evidence insufficient to hold hospital directly liable for breach of nondelegable duty); *Simmons v. Tuomey Reg'l Med. Ctr.,* 341 S.C. 32, 533 S.E.2d 312 (2000) (hospital may be held liable for negligent acts of emergency room physicians on theory of nondelegable duty).

## B. Apparent Agency Theories

Daly contends that ACWH may be held vicariously liable on the basis of apparent agency. We reject her contention as follows.

### 1. Defining the Argument

■ Daly argues for vicarious liability under the doctrines of "vicarious liability by estoppel" and "apparent authority." However, her briefs demonstrate that she is pressing a single argument based on the doctrine of apparent agency:

- Agency by estoppel and vicarious liability by estoppel are synonymous. *See Nation v. City & County of Denver,* 685 P.2d 227, 229 (Colo.App.1984) (using terms interchangeably).

- Because Daly seeks to establish vicarious liability for a physical tort, she is asserting apparent agency, not apparent authority. Although apparent agency is theoretically distinct from apparent authority, the terms are often used interchangeably. *Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 948 n. 2 (Tex.1998); M. McWilliams & H. Russell, *Hospital Liability for Torts of Independent Contractor Physicians,* 47 S.C. L.Rev. 431, 445 n. 75 (1996).

- Daly's briefs contain no meaningful distinction between her arguments based on agency by estoppel and apparent agency. This is not surprising: the two doctrines are based on the same principles and are often regarded as indistinguishable. *See Nation v. City & County of Denver, supra; Sword v. NKC Hosps., Inc., supra,* 714 N.E.2d at 148 n. 3; *Baptist Mem'l Hosp. Sys. v. Sampson, supra,* 969 S.W.2d at 948 n. 2 (as a practical matter, there is no distinction between ostensible agency, apparent agency, apparent authority, and agency by estoppel).

Accordingly, we will treat Daly's assertions as a single contention based on the doctrine of apparent agency.

### 2. Applying the Doctrine

Many courts have held that apparent agency may be used to hold corporate entities (such as hospitals and clinics) vicariously liable for the negligence of independent contractor physicians. *See Sword v. NKC Hosps., Inc., supra,* 714 N.E.2d at 150; *Hill v. St. Clare's Hosp.,* 67 N.Y.2d 72, 499

N.Y.S.2d 904, 490 N.E.2d 823 (1986); *Burless v. W. Va. Univ. Hosps., Inc.*, 215 W.Va. 765, 601 S.E.2d 85, 93 (2004).

Colorado courts, however, have yet to approve the doctrine for this purpose. Whether they could do so and continue to recognize the corporate practice of medicine doctrine is unclear. (There is scant authority on this question because the corporate practice of medicine doctrine has limited support outside of Colorado. *See generally* John D. Hodson, Annotation, *Liability of Hospital or Sanitarium for Negligence of Physician or Surgeon*, 51 A.L.R.4th 235, § 10(a) (1987–2005).).

We need not decide whether apparent agency may be applied to a corporate entity such as ACWH in a manner that is harmonious with the corporate practice of medicine doctrine. Assuming, without deciding, that it may, Daly still cannot prevail. The undisputed evidence precludes application of the apparent agency doctrine in this case.

■ In the context of medical malpractice actions, courts have articulated various formulations of apparent agency. But courts agree on two elements: (1) the entity must have acted in such a way that a reasonable person would believe that the doctor was a servant or agent; and (2) the entity's actions must have caused the plaintiff to rely on the care or skill of the doctor. *See Burless v. W. Va. Univ. Hosps., Inc., supra,* 601 S.E.2d at 95–96; *Sword v. NKC Hosps., Inc., supra,* 714 N.E.2d at 149; Restatement § 267.

Here, Daly's allegations, viewed in the most favorable light, arguably could establish the first element. In combination, ACWH's advertisement in the yellow pages, and its various practices in making appointments, billing and collecting, and handling questions, could lead a reasonable person to believe that the doctor was ACWH's servant or agent.

■ But the undisputed evidence refutes the second element. Daly did not allege that ACWH's representations caused her to seek treatment from the doctor. On the contrary, undisputed evidence shows that Daly was referred to the doctor by her regular physician.

Thus, as a matter of law, Daly cannot establish vicarious liability under the doc-

trine of apparent agency. *See Porter v. Sisters of St. Mary*, 756 F.2d 669 (8th Cir.1985) (assuming that state law allows a hospital to be held vicariously liable for doctor's malpractice on a theory of apparent agency, hospital must prevail where there is no evidence that hospital's representation caused patient to rely on the care or skill of the doctor).

The judgment is affirmed.

Judge CASEBOLT and Judge LOEB concur.