**CARL'S ITALIAN RESTAURANT and Angie Arellano, Plaintiffs–Appellants,**

v.

**TRUCK INSURANCE EXCHANGE (Members of the Farmers Insurance Group of Companies), Defendant–Appellee.**

No. 06CA2183.

Colorado Court of Appeals, Div. A.

Nov. 29, 2007.

Certiorari Denied May 12, 2008.

Dennis McElwee, Lakewood, Colorado; Sawaya & Rose, P.C., Michael G. Sawaya, Judith K. Funderburg, Denver, Colorado, for Plaintiffs–Appellants.

Levy, Morse & Wheeler, P.C., Marc R. Levy, Scott C. Kreider, Englewood, Colorado, for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

In this declaratory judgment action concerning a business owner's liability insurance policy, plaintiffs, Carl's Italian Restaurant and Angie Arellano, appeal from the trial court's determination that defendant, Truck Insurance Exchange (Members of the Farmers Insurance Group of Companies), had no duty to defend Carl's against Arellano's complaint and no duty to indemnify Carl's for any damages sought by Arellano. Because we agree with the trial court that Truck had no duty to defend, we affirm the judgment and do not reach the question of Truck's duty to indemnify.

## I. Background

The underlying complaint alleged that Arellano was injured in an automobile collision with another driver, Buck Perigo, and that Perigo was, as relevant here, an employee or apparent agent of Carl's at the time of the accident. Arellano's complaint requested damages on several theories of tort liability against Perigo, Carl's, and the owner of the restaurant, who is not a party to this appeal.

At the time of the accident, Carl's had a business owner's liability policy with Truck. The policy contained an "auto exclusion" clause, which excluded coverage for "'bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any ... 'auto' ... owned or operated by or rented or loaned to *any insured*" (emphasis added). The policy defined an insured to include Carl's employees "while acting within the scope of their employment or performing duties related to the conduct of Carl's business."

Carl's sent the complaint to Truck and asked it to defend and to indemnify Carl's for any damages awarded to Arellano. Relying on the auto exclusion, Truck refused. Plaintiffs then brought this declaratory judgment action, seeking to determine whether Truck had a duty to defend and indemnify under the policy. Truck moved to dismiss, arguing that it had no duty to defend or indemnify as a matter of law. The court agreed and granted the motion.

On appeal, plaintiffs do not dispute the trial court's determination that, as an employee of Carl's, Perigo was an insured and the exclusion applied. Instead, they assert, as they did in the trial court that under the facts of the underlying complaint, Perigo could be deemed a temporary worker or an apparent agent of Carl's, in which case he would not be an insured to whom the policy exclusion applied, and thus Truck would have a duty to defend. However, regardless whether Perigo's status as a temporary worker or an apparent agent would trigger Truck's duty to defend, we agree with the trial court that, based on the allegations of the underlying complaint, Perigo was neither one.

## II. Duty to Defend—Standard of Review

■ The duty to defend concerns an insurance company's duty to affirmatively defend its insured against pending claims, while the duty to indemnify involves the insurer's duty to satisfy a judgment entered against the insured party. *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo.2003). When a court properly finds that there is no duty to defend, there is no need to decide whether there is a duty to indemnify. *Id.* at 300.

■ A duty to defend arises when factual allegations in the underlying complaint, if sustained, would impose a liability on the insured that is arguably covered by the policy. *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 502 (Colo.2004). To determine a duty to defend, a court must restrict its examination to the complaint and the insurance policy.

*Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo.1991). If the complaint alleges even one claim that is arguably covered by the policy, the insurer must defend its insured against all claims presented in the complaint. *Bainbridge, Inc. v. Travelers Cas. Co.*, 159 P.3d 748, 756 (Colo.App.2006).

■ But, if the insurer establishes that the situation is "solely and entirely within the exclusions in the insurance policy" and "that the exclusions are not subject to any other reasonable interpretations," then there is no duty to defend. *Hecla*, 811 P.2d at 1090.

■ Whether there is a duty to defend is a question of law. Therefore, our review is de novo. *Thompson*, 84 P.3d at 501; *State Farm Mut. Auto. Ins. Co. v. Kastner*, 77 P.3d 1256, 1261 (Colo.2003).

## II. Perigo Was Not a Temporary Worker

■ The policy defines "temporary worker" as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term work conditions." According to the policy, a temporary worker is not an "employee." Thus, plaintiffs argued to the trial court that Truck had a duty to defend because "temporary worker" was not included in the category of "insured" to which the auto exclusion applied.

The court rejected the argument, determining that, under the policy, a temporary worker must be "furnished" by a third party. The court reasoned that Perigo could not be a temporary worker because "there is no indication [in the complaint] that Perigo was furnished to Carl's by a temporary worker agency or any other entity." On appeal, plaintiffs contend that the trial court erred in determining that the term "furnished" requires that a temporary worker be supplied by a third party. We disagree.

■ An insurance policy is a type of contract and "should be interpreted consistently with the well settled principles of contractual interpretation." *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990). We give terms in an insurance policy "their plain and ordinary meanings" unless it is clear from the policy that the parties intended an alternative interpretation. *Id.; State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 167 (Colo.1993) (a term in question should be construed as it would be "understood by a person of ordinary intelligence").

■■■ In determining whether a term is ambiguous, we must consider the term in the context of the policy as a whole. *See Allstate Ins. Co. v. Juniel*, 931 P.2d 511, 513 (Colo. App.1996). An alternative interpretation that is unreasonable will not render a word or phrase ambiguous. *See Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 793 (Colo.App.2001), *abrogated in part on other grounds by Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116 (Colo.2007); *see also Sunshine v. M.R. Mansfield Realty, Inc.*, 195 Colo. 95, 98, 575 P.2d 847, 849 (1978) (when there is only one "reasonable meaning under the circumstances," both parties are "bound to that reasonable meaning of the contract's terms").

Plaintiffs argue that the word "furnished" is ambiguous because it could mean that a worker could "furnish himself" to an employer. However, in the context of the insurance policy, we conclude that plaintiffs' interpretation is unreasonable. If a person could furnish himself to an employer, every worker could choose to "furnish himself" or be told to "furnish himself" by his employer, and become a "temporary worker" whenever such a classification would be convenient. Any time a worker did a task that was not strictly within his job description (for example, picking up a ringing phone of a permanent employee who was absent from the office during lunch hour), the worker's employer could claim for insurance purposes that he was a "temporary worker" while performing that task. *See Monticello Ins. Co. v. Dion*, 65 Mass.App.Ct. 46, 836 N.E.2d 1112, 1115 (2005)(because "[a]ny employee of a business, at least since the abolition of slavery, can be said to 'furnish his services' to his employer, a phrase synonymous with 'work for' his employer," the policy's phrase would have no meaning if it were read to include the ability for one to furnish oneself).

Interpreting the word "furnished" to require the actions of a third party is also

consistent with Colorado appellate decisions defining the term in similar contexts. *See Nissen*, 851 P.2d at 169–70 (interpreting a provision of an automobile insurance policy, the court determined, "A person does not 'furnish' himself or herself with something for his or her own use. Rather, the reasonable meaning of the phrase is that a third party, whether employer, friend or relative, has provided a car for one's use."); *Cruz v. Farmers Ins. Exch.*, 12 P.3d 307, 310 (Colo. App.2000) (same); *Allstate Ins. Co. v. Willison*, 885 P.2d 342, 344 (Colo.App.1994)(same).

Other jurisdictions interpreting insurance policies or statutes containing the same definition of "temporary worker" as here have reached a similar result. *See Monticello Ins. Co.*, 836 N.E.2d at 1115 (the definition of a temporary worker necessarily connotes some involvement by a third person); *see also Brown v. Ind. Ins. Co.*, 184 S.W.3d 528, 538 (Ky.2005)(same); *Nationwide Mut. Ins. Co. v. Allen*, 83 Conn.App. 526, 850 A.2d 1047, 1055 (2004) (same); *AMCO Ins. Co. v. Dorpinghaus*, No. 05–1296, 2007 WL 313280, at *5 (D.Minn., Jan.12, 2007)(unpublished memorandum opinion and order)(same); *cf. Am. Family Mut. Ins. Co. v. Tickle*, 99 S.W.3d 25, 30 (Mo.Ct.App.2003) (describing the history and purpose behind the term "temporary worker").

To the extent that *Bituminous Casualty Corp. v. Mike Ross, Inc.*, 413 F.Supp.2d 740, 745 (N.D.W.Va.2006), and *American Family Mutual Insurance Co. v. As One, Inc.*, 189 S.W.3d 194, 198 (Mo.Ct.App.2006), reach a contrary result, we note that neither opinion analyzes the term in the context of the insurance policy in which it is contained.

Additionally, we do not agree with plaintiffs' argument that the word "furnished" becomes unclear when read in conjunction with the Truck policy definition of "leased worker."

The policy defines a "leased worker" as "a person leased to you *by a labor leasing firm* under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. 'Leased worker' does not include a 'temporary worker.' " (Emphasis added.)

Because the definition of "leased worker" explicitly refers to a third party who furnishes the worker, and the term "temporary worker" does not, plaintiffs contend, it can be inferred that a third party is not required to furnish a "temporary worker." We do not agree.

The "leased worker" provision requires that the worker be furnished by a particular type of third party, while the "temporary worker" provision requires involvement of any type of third party. Thus, contrary to plaintiffs' contention, the distinction between the two terms does not create an ambiguity, but simply reflects different levels of specificity in the policy. "[J]ust because one provision of an insurance policy refers to third-party involvement more explicitly than another provision of the same policy does not mean that third-party involvement is *excluded* from the latter provision." *Dorpinghaus*, 2007 WL 313280, at *6 (analyzing the same terms).

### III. Perigo Was Not an Apparent Agent

■ It is undisputed that the policy definition of "insured" in the Truck auto exclusion does not include an "apparent agent." Thus, plaintiffs contend, because the underlying complaint alleged that Carl's controlled or supervised Perigo's driving as an apparent agent, the trial court erred in determining that the auto exclusion applied. However, even if an allegation of apparent agency could trigger coverage, an issue we need not decide, we agree with Truck and the trial court that, as a matter of law, the concept of apparent agency is not applicable here.

#### A.

■ An apparent agent has the "power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 474 (Colo.1995)(quoting Restatement (Second) of Agency § 8 (1958)). The terms "ostensible agency," "apparent agency," "apparent authority," and "agency by estoppel" are used interchangeably. *Daly v. Aspen Ctr. for*

*Women's Health, Inc.*, 134 P.3d 450, 454 (Colo.App.2005).

The purpose of apparent agency is to protect third parties who, in good faith, rely upon their belief that an agency relationship exists between the principal and the apparent agent. *See In re Marriage of Robbins*, 8 P.3d 625, 628 (Colo.App.2000). Apparent agency is created by evidence of "written or spoken words or other conduct of the principal which, reasonably interpreted, causes a person to believe that the principal consents to have the act done on his behalf by a person purporting to act for him." *Lucero v. Goldberger*, 804 P.2d 206, 209 (Colo.App.1990)(emphasis omitted).

A principal may be liable for an apparent agent's actions, even if the principal has no knowledge of the agent's conduct or the conduct is not within the scope of employment. *See Montoya*, 904 P.2d at 473–74 (noting that apparent agency does not fall under respondeat superior).

### B.

The underlying action filed by Arellano sounded in tort, and to hold a principal liable based on the acts of an apparent agent in a tort action, the tort must have resulted from the injured party's reliance on the agent's apparent authority. *See* Restatement (Second) of Agency § 265(1) ("principal is subject to liability for torts which result from reliance upon, or belief in, statements or other conduct within an agent's apparent authority"); *cf. Franks v. City of Aurora*, 147 Colo. 25, 31, 362 P.2d 561, 564 (1961) (requiring that a "third person has changed his position" in apparent agency liability) (quoting Warren A. Seavy, *Studies in Agency* 184 (1949)).

Such reliance typically is formed through voluntary interactions in which the third party can assess the agent's authority and choose how to deal with the agent. *See, e.g., Daly*, 134 P.3d at 455 (malpractice of surgeon whom plaintiff consulted for treatment); *Montoya*, 904 P.2d at 471 (tort resulting from a lengthy business relationship); *see also* Restatement (Second) of Agency §§ 266, 267 (physical harm caused by reasonable reli-

ance on misrepresentations of apparent agent). However, in the usual personal injury action, the relationship between the plaintiff and the defendant is nonconsensual, and "the injured person does not rely upon authority of any kind in getting hurt." *See Schlick v. Berg*, 205 Minn. 465, 286 N.W. 356, 358 (1939).

For example, in an automobile accident based on negligence, the injured party's interaction with the other driver in that type of situation is typically not by choice, but by happenstance. *See Kansallis Fin. Ltd. v. Fern*, 421 Mass. 659, 659 N.E.2d 731, 734 (1996) (describing accidents as a type of tort in which harms are "inflicted" on a victim who "made no choice to deal with the agent"). Indeed, the underlying complaint here described a relatively common, two-car collision allegedly caused by the negligence of Perigo. Nothing in the facts alleged suggests that Arellano was injured because she relied on Perigo's authority from Carl's, apparent or otherwise. *See Lopez v. Am. Family Mut. Ins. Co.*, 148 P.3d 438, 440 (Colo. App.2006) (a court may not read hypothetical facts into the complaint to determine the existence of a duty to defend).

Moreover, although there may be situations in which a car accident is caused by an injured party's justified obedience to traffic or driving directions issued from a person exhibiting the appearance of authority—for example, a uniformed school crossing guard or law enforcement officer—there is nothing about a restaurant worker driving on a public road that suggests any legitimate authority to control traffic or to cause a third party to alter his or her driving. *See Piedmont Operating Co. v. Cummings*, 40 Ga.App. 397, 149 S.E. 814, 815 (1929)(in a car accident case, "the injured person is not injured as a result of ... reliance upon any authority to operate the automobile which the employer has apparently, but not actually, conferred upon the employee"); *Van Den Eikhof v. Hocker*, 87 Cal.App.3d 900, 906, 151 Cal.Rptr. 456, 460 (1978) (plaintiff did not rely on signs on side of car advertising defendant's business "to his injury"). Thus, even if the complaint could be read to imply that Arellano altered her actions in reliance upon Perigo's appar-

ent authority to drive for Carl's, such reliance would be unreasonable as a matter of law.

Accordingly, we agree with the trial court's conclusion that, based on the allegations of the complaint, Perigo could not be a temporary worker or apparent agent of Carl's. As the trial court also correctly determined, if Perigo was working within the scope of his employment at the time of the accident as alleged in the complaint, he was an "insured" under the policy and the auto exclusion applied. Conversely, if he was not acting within the scope of his employment, Carl's would have no liability for Arellano's injuries. *See, e.g., Pham v. OSP Consultants, Inc.,* 992 P.2d 657, 658–59 (Colo.App.1999)(applying scope of employment analysis to car accident). Either way, the trial court properly concluded that Truck had no duty to defend.

The judgment is affirmed.

Judge NEY * and Judge NIETO * concur.