**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID K. PANICO; JANICE L.
PANICO,

      Plaintiffs-Appellants,

v.

STATE FARM FIRE AND CASUALTY
COMPANY,

      Defendant-Appellee.

No. 10-1219

(D.C. No. 09-cv-02398-RPM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **EBEL** and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore,

submitted without oral argument.

This case concerns an insurance company's duty under Colorado law to defend its

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

insureds against claims by third parties.  The plaintiff/appellants, David Panico and Janice Panico (the Panicos), sold a property and the buyers, Martha Cesery Taylor and Walter Taylor (the Taylors), sued them upon discovering the property was not as represented.[1] State Farm Fire and Casualty Company (State Farm) refused to defend the Panicos in the suit brought by the Taylors, and the Panicos then sued State Farm for breach of insurance contract.  The district court determined that the Taylors' claims were not covered under the Panicos' insurance policies, and granted summary judgment in State Farm's favor. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

The Panicos sold a property in Aspen, Colorado (the Property) to the Taylors. David Panico had built the house on the Property, and also had designed and built several additions to the house.  The Taylors lived in Florida, and relied primarily on their real estate agent and an inspector to ensure that the Property was acceptable.  According to the Taylors' complaint, after purchasing the Property, they discovered that it was virtually uninhabitable due to serious design and construction defects, mold, rodents, and drainage problems.  The Taylors sued the Panicos and the real estate agent.

---

[1] We note that the Taylors have subsequently taken bankruptcy.  The Taylors' case is stayed "until such time the Court receives an order from the Bankruptcy Judge saying that the [Taylors] shall be allowed to proceed."  Aplt. App. at 32.  Prior to the stay, a magistrate judge issued a report and recommendation recommending that the case be dismissed as a sanction for discovery violations.  Id. at 31.

*The Taylors' complaint*

The Taylors' complaint asserts three claims for relief against the Panicos. Count one (titled Fraudulent Misrepresentation) alleges that the Panicos made false representations about the condition of the Property, that the Panicos knew the representations were false or that they were acting in reckless disregard of the truth, and that the Panicos knew that the Taylors were relying on that information and the Panicos intended to induce their reliance. Aplt. App. at 47. Count two (titled Fraudulent Concealment Nondisclosure) alleges that the Panicos failed to disclose and/or concealed material facts about the condition of the Property, with the intent that the Taylors would take a course of action that they might not have taken had they known the truth. Id. Count three (titled Negligent Misrepresentation Causing Financial Loss in a Business Transaction) alleges that the Panicos gave false, inaccurate, or incomplete material information to the Taylors in the course of a business transaction from which the Panicos stood to benefit, that the Panicos were negligent in communicating the information, and that the Panicos gave the information with the intent or knowledge that the Taylors would act or decide not to act in reliance upon the information. Id. at 48.

Some of the factual allegations made in the General Allegations portion of the Taylors' complaint are also relevant here. The Taylors allege that, shortly after her first visit to view the Property,

> Ms. Cesery Taylor experienced severe respiratory problems and was placed under a doctor's care in Aspen and again upon her return to Florida, but she attributed the illness to a "sick" plane. Based upon her prior experience

3

with [a property the real estate agent had previously showed to her], she believed that [the real estate agent] would never have shown her a mold-infested property, and she believed the statements of [real estate agent] representatives that the . . . [P]roperty had been thoroughly and professionally inspected.

Id. at 41. Additionally, the Taylors allege that, upon arriving to move in, "[a]fter less than an hour's exposure, [Cesery Taylor] became sufficiently ill that she required repeated medical consultation and treatment." Id. at 43.

*The Panicos' insurance policy*

The Panicos demanded that State Farm defend them against the Taylors' suit, and State Farm declined. State Farm argues that the Taylors' claims are not covered. Although the parties have not determined which of the Panicos' three State Farm insurance policies actually applies here, they agree that the relevant language in each policy is identical.[2] The relevant coverage is the personal liability coverage, which provides:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
>
> 1.  pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> 2.  provide a defense at our expense by counsel of our choice.

Aplt. App. at 129. An occurrence is "an accident, including exposure to conditions, which results in: a. bodily injury; or b. property damage." Id. at 119. Bodily injury is

---

[2] For simplicity's sake, this order and judgment will refer to "the policy."

4

"physical injury, sickness, or disease to a person." Id. at 118. Property damage is "physical damage to or destruction of tangible property, including loss of use of this property." Id. at 119. Certain types of liability are excluded from personal liability coverage, including "property damage to property rented to, occupied or used by or in the care of any insured . . . ." Id. at 132.

## II

*Standard of review*

We review a grant of summary judgment de novo, applying the same standards as the district court. Jones v. Okla. City Pub. Sch., 617 F.3d 1273, 1277 (10th Cir. 2010). Summary judgment is proper only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We examine the record in the light most favorable to the non-moving party. Thomas v. Int'l Bus. Machs., 48 F.3d 478, 484 (10th Cir. 1995).

*Governing law*

The interpretation of an insurance contract is a matter of state law and, sitting in diversity, we look to the law of the forum state. Hous. Gen. Ins. Co. v. Am. Fence Co., 115 F.3d 805, 806 (10th Cir. 1997). The parties agree that Colorado law applies in this case. An insurance policy is a contract, and its terms are interpreted based on the principles of contract interpretation. Undefined terms are given their plain, ordinary meanings, or the "meaning[s] a person of ordinary intelligence would attach to [them]." Simon v. Shelter Gen. Ins. Co., 842 P.2d 236, 240 (Colo. 1992). Ambiguous policy

5

language is construed against the insurer. <u>Hecla Mining Co. v. N.H. Ins. Co.</u>, 811 P.2d 1083, 1090 (Colo. 1991). A term is ambiguous if it is susceptible to more than one reasonable interpretation. <u>Id.</u>

The Panicos' insurance policy provides for both defense against and indemnification for covered liability. The duty to defend is triggered by a third party's assertion of claims that could potentially fall within policy coverage. <u>Id.</u> In contrast, the duty to indemnify is triggered only by actual liability for covered occurrences. <u>Id.</u> To determine whether there is a duty to defend, courts look "no further than the four corners of the underlying complaint." <u>Cyprus Amax Minerals Co. v. Lexington Ins. Co.</u>, 74 P.3d 294, 299 (Colo. 2003). To avoid the duty to defend, the insurer bears the burden of showing that the underlying claim cannot fall within policy coverage. <u>Id.</u> at 301. If the underlying complaint asserts multiple claims, one of which is arguably covered, the insurer has a duty to defend against all claims asserted. <u>Fire Ins. Exch. v. Bentley</u>, 953 P.2d 1297, 1300 (Colo. App. 1998). Thus, in this case, State Farm must show that none of the Taylors' claims potentially fall within the policy's coverage.

III

The Panicos argue that the Taylors brought three types of claims that trigger coverage: claims for bodily injury caused by exposure to conditions in the home; claims for property damage caused by the Panicos' misrepresentation of the condition of the Property; and claims for property damage caused by faulty construction and/or negligent maintenance. Aplt. Br. at 20-21. We conclude that State Farm has no duty to defend

6

because the Taylors did not bring bodily injury claims, and the property damage claims are subject to the owned property exclusion.

*The personal injury allegations*

The Panicos contend that the Taylors' complaint triggers the duty to defend because it contains allegations of bodily injury to Cesery Taylor caused by exposure to conditions at the Property. However, there is no duty to defend here because the Taylors did not, in fact, make any personal injury claim. The complaint mentions Cesery Taylor's reaction to exposure to the house only to provide a factual context for the property damage claims made and to illustrate the severity of the Property's problems. The complaint does not seek damages, or any other relief, for bodily injuries.

Under Colorado law, the insurer must tender a defense if "the underlying complaint alleges any facts or claims that might fall within the ambit of the policy . . . ." Cyprus Amax, 74 P.3d at 301 (emphasis omitted). Generally, this means that courts do not inquire into the validity of the allegations when considering a duty to defend, and that complaints are to be read liberally with a view towards affording coverage to the insured.[3] Id. at 297. However, this rule does not mean that the mere mention of one or two facts

---

[3] The Colorado Court of Appeals has also stated that it is "the factual allegations in the complaint, and not the legal claims, that determine an insurer's duty." Gerrity Co. v. CIGNA Prop. & Cas. Ins. Co., 860 P.2d 606, 607 (Colo. App. 1993). This statement was made in the context of a claim that was labeled a negligence claim but was really a breach of contract claim. The Colorado courts look beyond the legal labels attached to a claim to determine if it is truly a covered claim or not. The courts do not, however, look beyond the claims asserted to see if there are other claims that could have been asserted based on the facts.

7

that could constitute part of a covered claim triggers coverage if it is clear that those facts are not part of any claim for relief. If there is no claim, there is no duty to defend. See Constitution Assocs. v. N.H. Ins. Co., 930 P.2d 556, 563 (Colo. 1996) ("[T]he duty to defend pertains to the company's duty to affirmatively defend its insured against pending claims." (emphasis added)); Carl's Italian Rest. v. Truck Ins. Exch., 183 P.3d 636, 638 (Colo. App. 2007) ("A duty to defend arises when factual allegations in the underlying complaint, if sustained, would impose a liability on the insured that is arguably covered by the policy." (emphasis added)). The Panicos' interpretation of the duty to defend would require insurers to defend against suits alleging only non-covered claims if a court could conceive of a covered claim that would be supported by the facts recited. This would greatly expand an insurer's duty to defend, and would require courts to speculate and assume the role of advocate for the plaintiff in the underlying lawsuit.

The Taylors' complaint does not seek relief for bodily injury to Cesery Taylor. The complaint clearly seeks recovery for the economic damages incurred in the purchase of the Property: the cost to bring the Property up to its warranted condition, or the difference between what the Taylors paid for the Property and what they received. Because the Taylors' complaint cannot reasonably be read as an attempt to hold the Panicos liable for bodily injury, State Farm's duty to defend is not triggered.

*The property damage claims*

The Panicos argue that the Taylors brought claims for property damage, caused either by the Panicos' misrepresentations or their negligent construction and maintenance

8

of the Property.  To the extent that the Taylors' complaint alleges such claims, they do not trigger a duty to defend because they are subject to the owned property exclusion.  The policy excludes from coverage claims for "property damage to property rented to, occupied or used by or in the care of any insured . . . ."  Aplt. App. at 132.  Whether we look to the Panicos' alleged misrepresentations concerning the Property, their alleged negligent construction of the Property, or their alleged negligent maintenance of the Property as the relevant occurrence, the Panicos cannot avoid the owned property exclusion.  All three would have taken place while the Panicos owned the property.

In a recent case, the Colorado Court of Appeals held that an owned property exclusion barred coverage of claims for property damage in connection with misrepresentations in a property sale, even though the actual damage occurred after the sale.  Sachs v. Am. Family Mut. Ins. Co., No. 09CA1536, 2010 WL 3259822 (Colo. App. Aug. 19, 2010).  In Sachs, the plaintiffs in the underlying lawsuit purchased a house from the Sachses.  After the purchase, the house's basement floor subsided by four inches, and the buyers sued the Sachses for, among other things, negligent misrepresentation.  The Colorado Court of Appeals held that the owned property exclusion applies if the insured owned the property at the time of the alleged misrepresentation, and "whether the subject premises were sold before the injury or damage occurred is immaterial to the applicability of the exclusion."  Id. at *5.  Because the Sachses owned the property when they made the alleged misrepresentations, the buyers' claims were subject to the owned property exclusion and the insurer had no duty to defend.  Similarly, in the case before us, the

9

Panicos owned the Property when they made the alleged misrepresentations.[4]

Further, the Panicos owned or controlled the property when they negligently built or maintained it, as well as when the resulting damage occurred. In review of cases from other jurisdictions which involve similar claims and owned property exclusions, courts have held that an owned property exclusion bars coverage of a home purchaser's negligence claims against the insured. See Lenning v. Commercial Union Ins. Co., 260 F.3d 574, 585 (6th Cir. 2001) ("[A]ny alleged poor craftsmanship or negligence actually arose while the house was still under construction. Inasmuch as [the insured] owned the property during the entire construction period and up until the closing, she was the owner at the time the alleged damage occurred.") (applying Kentucky law); Boggs v. Great N. Ins. Co., 659 F. Supp. 2d 1199, 1213 (N.D. Okla. 2009) ("If the Boggses' negligence were to have caused any damage to the fireplaces, this damage would have occurred while the Boggses owned the residence." (footnotes omitted)); Cooley v. State Farm Fire & Cas. Co., No. 09-CV-0332, 2009 WL 3378271, at *4 (E.D. Ark. Oct. 16, 2009) (determining that the owned property exclusion applied because the underlying plaintiffs' "allegations clearly relate to defects that arose and/or existed during the time the [insureds] owned and resided in the residence") (applying Arkansas law); Allstate Ins. Co. v. Chaney, 804 F. Supp. 1219, 1223 (N.D. Cal. 1992) (determining that the owned

---

[4] The policy covers only claims for property damage "caused by an occurrence." Aplt. App. at 129. The Panicos' misrepresentations did not cause damage to the Property; the Property was damaged before any misrepresentations were made to the Taylors.

10

property exclusion applied because the misrepresented property damage occurred while the insured owned the property) (applying California law). The Panicos owned the Property at all relevant times, i.e., when the Panicos made the alleged misrepresentations to the Taylors, when the Panicos negligently constructed the property, and when the Panicos maintained the Property. The owned property exclusion applies here to bar coverage of the Taylors' claims against the Panicos.

State Farm has no duty to defend because none of the Taylors' claims is covered by the Panicos' liability insurance. Therefore, the decision of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge